## WHITSON v. NICKOLS. (No. 1125—5060.)

Commission of Appeals of Texas, Section A. Jan. 9, 1929.

Rucks & Enlow, of Angleton, for plaintiff in error.

A. E. & Carlos B. Masterson, of Angleton, and R. A. Bassett, of Richmond, for defendant in error.

NICKELS, J. The case is in the Supreme Court on one proposition of law, thus stated in the petition in error:

"Where the evidence was fully developed and the undisputed evidence shows that the proximate cause of the injury resulted from one of three causes, viz.: unavoidable accident, defendant's negligence, or plaintiff's contributory negligence, and the jury found in answer to special issues properly submitting such issues that neither of said three causes was the proximate cause of the injury, said verdict is inconsistent, irreconcilable, contradictory and unintelligent and contrary to the undisputed evidence and will not sustain any judgment."

As indicated, the jury found each party guilty of negligence, and that the negligence of either was not the proximate cause of plaintiff's injuries. It found, also, that the injury was not "the direct and proximate result of an unavoidable accident, as the same has heretofore been defined" (i. e., in the preliminary statements in the charge). Impact between plaintiff's body and defendant's automobile, with resultant injuries, at the time and place averred, is without dispute in proof. The anomaly presented, however, is apparent only, and, in our opinion, it is sufficiently explained in the record.

■ The "unavoidable accident," whose absence was declared on issue No. 1, is not the "accident" described by the word "unavoidable" in its ordinary popular or legal sense. On the contrary, it is such "accident" as was theretofore defined in the charge. "To constitute an 'accident' in the legal sense of the word," the jurors were told, "the casualty must be such as the defendant could not have avoided by the use of ordinary care * * * in the exercise of the means then at hand in the circumstances in which he was placed," etc. Presence of "unavoidable accident," then, was conditioned upon use of "ordinary care" by defendant. In consequence, when issue No. 1 is read with the explanatory part of the charge, as it must be, its responsive finding amounts to no more than a restatement of the finding of negligence against defendant made on issue No. 2.

"Proximate cause" was defined to be "the efficient cause without which the injury in question would not have" resulted, etc. The definition omits the element of concurrent or mutually contributive causes. Hence the jury answered that defendant's negligence (of itself) was not "the efficient cause * * * without which the injury would not have" occurred.

■ And so its answer on the ninth issue that plaintiff's negligence (found in response to the eighth issue) was not "the proximate cause of the injury" means that his negligence was not (of itself) "the efficient cause * * * without which the injury would not have" been suffered.

The jurors' action, then, is not without sense, for in the situation put to them by evidence they may well have believed that the impact and sequent injury were in part the results of defendant's negligence and in balance the results of plaintiff's negligence. Reasonably, they may have believed the injury would not have occurred if both parties had been contemporaneously free of negligence.

In the assignment of error and its proposition (as noted), there is assumption that the "undisputed evidence" shows the injury resulted (a) from defendant's negligence, or (b) plaintiff's negligence, or (c) unavoidable accident. But the negligence of each party was issuable, and enough has been said to show that the injury may have been the common result of the negligence of both in concurrence; and, when the definition of "unavoidable accident" upon which the jury acted is kept in mind, justifiable hypothesis appears upon which proximity of causation (in explanation of the verdict before us) may be attributed to things other than negligence of either party or "accident."

The course of the highway was north-south. The surfaced part of it is 17 feet and 6 inches wide. Plaintiff's team (two mules) was standing (wholly or partly) in the surfaced part of the highway, and "headed" east or southeastward. According to plaintiff's averments and testimony, he was standing at the "head" of the team (facing it) and about 4 feet from the eastern boundary of the surfaced part of the highway—he was "adjusting harness." He testified that he had hold of the bridle, etc., on one of the mules, and the mule was "raring up * * * was araring and lunging forward and lunging backward all the time," and "that he was going backward and forward with him" before and at the time something struck him in back, etc., and rendered him unconscious. Emory Deer, plaintiff's nephew, was driving the team, and, while plaintiff was engaged in "adjusting harness," Deer remained on the wagon and looked on. Deer testified, in part:

"We drove onto the shell" (i. e., surface of the highway) "and when we started onto it—we were coming on an angle and the right front wheel hit the berme of the road, which threw the other wheel on the edge of

the shell; and this here mule commenced raring and Mr. Whitson came there and was working trying to get the harness back into the collar, and this mule was going backward and forward all the time he was working with him; he would take two steps backward and then two forward and he was throwing Mr. Whitson along for four or five steps, and I looked down the road and saw the car" (i. e., defendant's automobile as it approached the scene) "about seven hundred yards down the road, somewhere between six and seven hundred yards. Well, I didn't think about him hitting my uncle. I didn't call attention to it, because I didn't think about it. I was looking at the mule, and I was holding the lines; and so the next thing I knew, why the rear of the car went by and it struck him just as the mule made a lunge out to the further part of the other side of the road," etc.

The jurors were informed (in the preliminaries of the charge) that "a new cause which is not a consequence of the first cause * * * and except for which the final injurious consequences would not have happened" would be "the proximate cause or sufficient intervening cause * * * and one to which no legal liability would attach," if it be without "control of the first actor" and nonanticipatable by him. The mule became obstreperous before the automobile got in his vicinity, and his "rearing" at instant of collision may not have been a "consequence" of the automobile's approach; he was not "under control" of the automobile driver at any time or in any sense; and it could not be ruled, as a matter of law, that the driver of the car ought have foreseen a final plunge by the mule so as to put plaintiff's body in contact with the automobile as it should pass. The mule, in a dryly legal sense, was "under the control" of plaintiff (considered as "first actor"), but anticipation of such a plunge as may have been finally made is not to be conclusively attributed to plaintiff. On the charge given, the jurors may have believed the mule and his conduct to be "the proximate * . * * or intervening cause."

The elements of respective negligence, concurrent negligence, and actions of the mule render Puckett v. Davis (Tex. Civ. App.) 238 S. W. 367, inapplicable as authority for the proposition asserted here; and the presence there of verdicts including findings both imposing liability and relieving of liability distinguish Kahn v. Cole (Tex. Civ. App.) 227 S. W. 556, and other cases cited by plaintiff in error.

The verdict, taken as a whole and read with those parts of the record which ought to be consulted in its interpretation, is sufficient to exonerate defendant in error and to support a judgment in his favor.

No other questions are presently involved, and we have no rightful concern with the manner of submitting the case to the jury or with the matter of sufficiency of evidence to support any one or more of the findings.

Accordingly, we recommend affirmance of the judgment of the Court of Civil Appeals.

CURETON, C. J. Judgment of the Court of Civil Appeals affirmed, as recommended by the Commission of Appeals.