**DALLAS NAT. BANK v. PEASLEE–GAUL-
BERT CO. et al.**
No. 10719.

Court of Civil Appeals of Texas.   Dallas.
Jan. 13, 1931.

Rehearing Denied Feb. 14, 1931.

J. L. Lipscomb and McBride, O'Donnell & Hamilton, all of Dallas, for appellant.

Turner, Rodgers & Winn and Leachman, Gardere & Bailey, all of Dallas, for appellees.

VAUGHAN, J.

The parties litigant to this appeal are the Dallas National Bank, appellant, incorporated under the banking laws of the United States, Peaslee-Gaulbert Company, incorporated under the laws of the state of Kentucky and operating in the state of Texas under a duly authorized permit, and E. V. Ashworth, appellees. For brevity, appellee Peaslee-Gaulbert Company will be referred to as appellee company.

On August 10, 1928, appellee company, as plaintiff, filed its suit against appellant and appellee Ashworth as defendants. On June 14, 1929, appellee Ashworth filed his first amended original answer to appellee company's petition and to the cross-action of appellant against him and his original cross-action over and against appellee company, Henger & Chambers Company (William C. Henger and James F. Chambers), and appellant bank. By its suit, appellee company sought to recover judgment against appellant and appellee Ashworth as defendants, for the sum of $2,415.75, being the balance alleged to be due on account of and for certain paint material sold by said appellee to appellant and appellee Ashworth to be and which were used in painting a certain office building, contracted for by appellant, and the foreclosure of its materialmen's lien against appellant and its property described in its pleadings.

Appellee company bottomed its right to recover against appellant and appellee Ashworth on the following terms and provisions of two contracts, viz.:

(a) Contract made and entered into by and between appellant, as owner, and Henger & Chambers Company, contractors, hereinafter referred to as contractors, on March 1, 1926, containing, among other things, the following provisions:

"Article 1. The contractors shall and will provide all the materials and perform all the work for the erection of a new bank and office building on the South side of Main Street, Block 77 of the City Survey, which site is now occupied by the Deere Building.

"Article 2. It is understood and agreed by and between the parties hereto that the work included in this contract is to be done under the direction of the said architect, and that his decision as to the true construction and meaning of the drawings and specifications shall be final.

"Article 3. No alteration shall be made in the work except upon written order of the architect."

"Article 5. It is mutually agreed that if it should become necessary to stop the work on account of the city opening Stone Street through to Commerce Street, or other similar occurrences, owner shall pay for the entire cost of the work up to that point including labor and materials incorporated in the work, materials on the site and work and materials contracted for whether or not delivered, unless cancellation under amicable agreement can be obtained. Owner shall also pay contractor pro rata of his commission up to the point at which the work is stopped.

"Article 6. For no fee in addition to that specified under Article 1x, the contractor shall demolish and remove the present (Deere) building; either doing so with his own forces, assorting and storing such of the materials as can be consistently used in the new building or doing this work under sub-contract with others as appears for the best interest of the owner and as he directs. As part of his services, contractor shall secure competitive prices on materials and sub-contract, shall analyze and make comparative tabulation to the owner and architect for his decision before placing the orders.

"Article 7. Removal of old building shall begin on April 1, 1926, unless owner instructs to the contrary."

"Article 9. It is mutually agreed between the parties hereto that the sum to be paid by the owner to the contractor for said work and materials shall be the actual net cost to the contractor (see definition of 'cost' below), plus a fee of $28,000 for his services. It is agreed that the word 'cost' as used in this contract shall include the actual net cost to the contractor of all materials, labor, freight and drayage, trucks and team hire, supplies, services, the lease of patent scaffold appliances, rental on storage place, premiums on insurance and bonds, salaries of Superintendents, Timekeepers, Watchmen and others actually

engaged on the work, the cost of fuel, telephone, lights, water, the cost of sub-contract work, temporary buildings and hoisting towers and other expenses incident to the construction of the building"

—and the following portions of the plans and specifications referred to in said contract, viz.:

"Sub-Contractors: The names of all subcontractors proposed to be employed shall be submitted for approval of the architects before they are employed. Sub-contractors must be of the first standing in their respective lines. The work required of each subcontractor shall be the work described in his sub-division of the specifications and shall be performed in the same manner as though he were a principal to the contract.

"Foreman:. Any careless or incompetent workman must be removed forthwith by the contractor, when notified to do so by the Architects.

"Cutting Away: The contractor shall not cut away any timber, dig under any foundations or into any wall or other structural part of the building, or in any case allow same to be done without the full knowledge and consent of the Architects.

"Duties of Architects & Superintendents: The duties of the Architects in addition to those stated elsewhere herein, will consist in giving on application such interpretation either in language, writing or drawings as in their judgment the nature of the work may require; in deciding upon the quantity and quality of all workmanship and material,— In case any workman, foreman or sub-contractor shall refuse to carry out instructions of the Architects or attempt to slight the work in any manner, he must be removed from the work forthwith by the contractor upon notice from the Architects.

"Substitutes and Equals: The owner reserves the right to substitute materials and change the kind of materials and the manner of doing work, provided such change or substitutions do not interfere with the progress of the work or entail an extra expense on the contractor. Where the word 'Equal' is used, it is the intent that the Architects shall be the sole judge.

"Workmen & Superintendents: All workmen and superintendents of general contractor and sub-contractors, shall be acceptable to the Architects and owner. Should the Architects demand the removal of such for cause, he shall be removed on two days notice in writing."

Contract of date, November 17, 1926, executed by and between appellee Ashworth and the contractors, submitting terms and conditions upon which contractors were willing to sublet to appellee Ashworth, viz.: "All of the painting, finishing and decorating, both interior and exterior, for the Dallas National Bank, in accordance with the plans and specifications of Coburn-Smith & Evans, architects, for the sum of $17,295. This work is to be done when required and kept apace with the progress of the building subject to our supervision in all respects. This proposal is conditioned on your using material of the Peaslee-Gaulbert Company and on your furnishing us a surety bond executed in accordance with form outlined attached, all work and materials to be furnished on this order to be in accordance with the plans and specifications, and to be approved by the architect or his representatives."

Said appellee company contended that, under the above provisions of said contracts, appellant made appellee Ashworth the agent of appellant, to the extent of purchasing paint material necessary to comply with the terms and provisions of said subcontract.

Appellee Ashworth based his right to recover against appellee company, appellant, and William C. Henger and James F. Chambers, copartners, the sum of $1,435.56, the actual cost of labor in applying the fourth coat of paint to appellant's said office building, over and above the original contract price for labor and material performed and used in applying the three coats of paint under said contract of date November 17, 1926, under the following contracts: (a) A contract alleged to have been made on the date a conference was held, about March 1, 1927, at which time appellee Ashworth, Charles P. Jarrott, the appellee company's manager at Dallas, D. F. Coburn, one of appellant's architects, Oscar Bruce, vice president of appellant bank, and James F. Chambers one of appellant's contractors, and alleged to have been made at said conference under the following circumstances, viz.: "That at said conference Henger & Chambers Company, Dallas National Bank and Peaslee-Gaulbert Company were all advised by this defendant that he had complied with his contract by applying one coat of size and two coats of paint, and that said disfiguration that appeared in the walls after having received the third coat, as contracted for (known as hot spots) due to the size, or the paint, or both, furnished by the Peaslee-Gaulbert Company, or to error in the specifications, and that if they required him to apply additional paint and size to remedy the condition he would have to make extra charges for all work and material over and above one coat of size and two coats of wall paint, and that it was agreed at said conference that the faulty conditions of said walls and ceilings were not due to the defendants' workmanship. Thereupon, the Dallas National Bank and Henger & Chambers Company authorized this defendant to apply extra and additional paint,. over and above one coat of size, and two coats of wall paint, wherever necessary, to the walls and ceilings of said building, and that the said Henger & Chambers Company and Dallas National Bank un-

224

derstood and agreed that the labor and material for said work would be over and above the contract price." (b) The contract of date March 1, 1926, as per material terms thereof, supra.

Appellee company contended that the paint materials furnished by it were as contracted for and suitable for the purpose for which same were sold and delivered. Appellee Ashworth likewise contended that the work performed by him and under his direction and supervision was as contracted to be performed and done in a good workmanlike manner. Appellee company, by proper and sufficient allegations, sought to recover against appellant, as principal, on the grounds that, the contracts between appellant, its contractors, and the contract between said contractors and appellee Ashworth created the relationship of principal and agent and not that of independent contractors.

As all matters in controversy between appellant and appellees and the other parties to this suit were determined by the judgment rendered by the court below, and this appeal involves only matters directly in issue between appellant and appellees, no further reference will be made to the issues thus determined as to the parties litigant not involved in this appeal.

Appellant and appellees were in accord in their agreement only as to one thing, viz.: That of the bad condition of the walls after the third coat of paint had been put on, their disagreement being sharp as to the cause of said condition—that is, (a) could not agree that same was the fault of either the paint used or the character of workmanship, or the condition of the walls. The pleadings of appellant and appellees were sufficient, in every material respect, to properly present and have determined the respective issues made by the claim of appellee company against appellant, that of appellee Ashworth against appellant, and of the defenses urged thereto by appellant, as evidenced by the duly filed pleadings of said parties, respectively.

Following are the special issues submitted and answers made thereto by the jury:

"No. 1: Do you find the size and wall paint of the plaintiff, Peaslee-Gaulbert Company, was suitable for the purposes for which it was sold? Answer 'Yes.'

"No. 2: Did the defendant Ashworth agree, on or about March 15, 1927, to pay to the Dallas National Bank the cost of all paint materials that were used in its building after said date? Answer, 'No.'

"No. 3: Did the Dallas National Bank agree with the defendant Ashworth, on or about March 15, 1927, to pay to him in addition to his written contract the cost of labor used by him after that date? Answer, 'Yes.'

"No. 4: Did the defendant, Henger & Chambers Company, agree with the defendant Ashworth, on or about March 15, 1927, to pay him in addition to his written contract the cost of labor used by him after that date? Answer, 'No.'

"No. 5: Were the materials applied, by the defendant E. V. Ashworth, to the walls of the Dallas National Bank in a good and workmanlike manner? Answer, 'Yes.'

"No. 6: What sum of money, if any, was actually paid by the defendant E. V. Ashworth for labor, if any, used by him after March 15, 1927? Answer, $1436.56."

Judgment was rendered on said findings in favor of appellee company against appellant for $2,446.04, and foreclosure of materialmen's lien on the property described in appellee company's petition; in favor of appellee Ashworth against appellant for $1,607.82; that appellee company take nothing by its cause of action against appellee Ashworth; that said Ashworth take nothing as against the defendants James F. Chambers and William C. Henger, individually or as copartners; that appellant, having dismissed the defendant, Union Indemnity Company said defendant was dismissed with its costs; that appellee Ashworth take nothing as against appellee company; that appellant take nothing as against appellee Ashworth and appellee company.

There being evidence disclosed by the record sufficient to sustain the findings of the jury, same are adopted as findings of material facts by this court.

Appellant, by appropriate propositions, contends that the contract executed by it and the contractors, for the erection of the office building, did not create the relationship of principal and agent between them, but that of owner and independent contractors. In opposition, appellees urge that the terms and provisions of said contract had reference to the means by which same was to be performed by said contractors, and did not represent the will of appellant only as to the result of the work contracted to be performed and materials to be used in the construction of said office building.

We have given to the terms and provisions of this contract, separately and collectively, careful consideration, and through our analysis, in the light of the following decisions, have reached the conclusion that same created the relationship of principal and agent between the contracting parties thereto: Gilbert Mfg. Co. v. Connellee (Tex. Com. App.) 265 S. W. 375; North Carolina Lbr. Co. v. Spear Motor Co., 192 N. C. 377, 135 S. E. 115; Cowles v. J. C. Mardis Co., 192 Iowa, 890, 181 N. W. 872.

By the terms of said contract, it is clear that the hiring of employees and subcontractors was contingent upon the approval of

the architects, Coburn-Smith & Evans, undoubtedly the agents of appellant; all employees were to be discharged by order of the architects. In the matter of cutting into the walls or foundation, such work was to be done under the supervision of the architects; when it should appear that more detailed instructions were required, it was necessary for the contractors to call upon the architects for same, and at any time the architects were empowered to criticize, refuse, and cause to be done over any particular work of the original contractors, or subcontractors. It was provided that, if any employee working on the building should slight his work in any degree, upon instruction from the architects such employee should be discharged. The architects were authorized to pass upon the quality and quantity of all workmanship and materials, and, in addition to the above, there was reserved to appellant the power to substitute and change the kind of materials used, and to change the manner of doing the work.

■ In as much as the contract for the construction of the office building for appellant by contractors created the relationship of principal and agent between said parties, and by its terms said original contractors were authorized to call to their assistance subcontractors for the performance of work necessary to comply with its terms, the contract executed by and between said contractors and appellee Ashworth created that of principal and subagent between appellant and said subcontractor, appellee Ashworth.

This conclusion is founded upon the self-evident meaning of the language of the above contracts by which the contractual rights and relationship of the parties thereto must be determined. Western Indemnity Co. v. Southern Surety Co. (Tex. Com. App.) 223 S. W. 179.

■ The paint materials, the value of which appellee company sued to recover, having been purchased by appellee Ashworth, appellant's agent, to be used and which were used by said Ashworth in painting appellant's office building, in the performance of his contract to put on an additional (the fourth) coat of paint on said office building, said appellee, as found by the jury, having complied with the terms and provisions of his contract to put three coats of paint on said office building, it follows that, under the original contract, subcontract, and the subsequent oral agreement, under which the fourth coat of paint was put on, in the purchase of said paint materials, appellee Ashworth acted as the subagent of appellant. Appellant, in its first propositions, makes this statement: "It was contemplated that some of the work should be done by and through sub-contractors in as much as the building was to be built and was built on the cost-plus plan, the

contractors were required to secure competitive bids on sub-contracts and material."

Charles P. Jarrett, witness for appellee company, testified: "At the time of my conversation with Mr. Ashworth, just prior to the time that he took this job, I knew that the contract between E. V. Ashworth and Henger & Chambers Company, which is designated Plaintiff's Exhibit No. 7, contained the provision: 'This proposal is conditioned on your using the materials of the Peaslee-Gaulbert Co.,' I discussed with Mr. Ashworth the fact that I was going to supply the material on that job. He came to my office when he had this contract and told me that he was going to use our materials on the job and the contract was signed at that time." Tynan v. Dullnig (Tex. Civ. App.) 25 S. W. 818; Commercial & Agricultural Bank v. Jones, 18 Tex. 811; Eastland v. Maney, 36 Tex. Civ. App. 147, 81 S. W. 574; Garcia v. Yzaguirre (Tex. Com. App.) 213 S. W. 236; William Cameron & Co. v. Gibson (Tex. Civ. App.) 278 S. W. 522.

Appellant having granted to contractors authority to appoint subagents, and they having so appointed appellee Ashworth. appellant was bound by the acts of said Ashworth, under and within the authorized terms of the contract between appellant and said contractors, and that the acts of said subagent were authorized by the terms of said original contract cannot be questioned. Hicks Rubber Co. v. Columbia, etc., Co. (Tex. Civ. App.) 252 S. W. 216. Hence it follows that, as the contract made by appellee Ashworth with appellee company for the purchase of the paint materials used in putting on the fourth coat of paint was for the benefit of appellant in the construction of its office building; for which it agreed to pay in its contract with contractors, appellant was liable for the contract price of the material so purchased and utilized in putting on said fourth coat of paint.

■■ Appellant very earnestly assails that portion of the judgment recognizing and enforcing the materialmen's liens on said office building and the premises upon which same was constructed, on the ground that appellee company did not pursue the course as directed in article 5453, R. S. 1925, providing how the lien may be fixed and secured by mechanics, contractors, and materialmen. This article only has application in those instances where materials are not furnished direct to the owner and the materialman wishes to preserve a right of recovery out of the funds in the hands of the owner belonging to the person to whom the materials were sold. Under such conditions, it is necessary that the procedural steps provided for in article 5453, supra, be taken, that the owner may not be mulcted for damages in excess of the first amount which he had obligated himself to pay as costs for the im-

provements contracted to be constructed. Article 16, § 37, Constitution of Texas; Strang v. Pray, 89 Tex. 525, 35 S. W. 1054; F. & M. Bank v. Taylor, 91 Tex. 78, 40 S. W. 876, affirmed by the Supreme Court, 91 Tex. 78, 40 S. W. 966; McBride v. Beakley (Tex. Civ. App.) 203 S. W. 1137; Wichita Falls Sash & Door Co. v. Jackson (Tex. Civ. App.) 203 S. W. 100.

Appellant obligated itself to pay for all material and labor without any limitation being placed in its original contract; and, appellee company having furnished the paint materials direct to appellant through its subagent, there was created and preserved by the above constitutional provision a lien upon appellant's bank and office building and the land upon which same was erected.

■ Appellant complains of the court's action in submitting special issue No. 1, supra. This issue was made necessary solely and only because of it being tendered in the pleadings of appellant and the pleadings of appellee Ashworth, viz.: By appellant, that the material furnished to Ashworth for use on defendant's building was defective and worthless, wholly unsuitable and unsatisfactory, and that it was applied by Ashworth and his crews in an unworkmanlike and inefficient manner, that, as a result of the defects in the paint and as a result of the inefficient and unworkmanlike manner in which it was applied, by said Ashworth and his crews, the walls and interior of defendant's building were spotted, blemished, and marred; and by appellee Ashworth as follows: "This defendant alleges that one coat of size and two coats of paint were applied to the walls and ceilings of said building in a thorough and workmanlike manner, but that either the size or the paint or both were defective." There being evidence in the record bearing upon the issues so presented, the court did not err in submitting same.

■ Appellant contends by its sixth proposition that the "findings of the jury that the paint furnished by appellee Peaslee-Gaulbert Company was suitable for the purposes for which it was sold, and the finding of the jury that the paint was applied by appellee Ashworth in a good and workmanlike manner are in conflict for the reason that the result disapproved by the architects could not be ascribed to defective surfaces, the issue of defective surfaces having been waived by both appellees."

The answers to special issues Nos. 1 and 5, supra, claimed to be in conflict, we think are free from that vice. Appellee company's suit was to recover for the paint material purchased by appellant through its subagent, appellee Ashworth, to put on the fourth coat of paint. Appellant resisted this demand, on the ground that, the paint furnished by appellee company to paint its office building was not suitable for the purpose for which it was sold, appellant contending that the paint material so furnished by said appellee was defective, wholly unsuitable, and unsatisfactory. The issue thus presented by the said litigants required the court to submit special issue No. 1; evidence having been introduced supporting the respective contentions of said litigants. Appellee company's right to recover *did not depend in any respect upon the* merits or demerits of the issues between appellant and appellee Ashworth; the material issues between them being the claim by said Ashworth for the value of additional services alleged to have been performed by him in putting on the fourth coat of paint, appellee Ashworth alleging that he had performed the work under his original contract in a thorough and workmanlike manner, in that he put on one coat of size and two coats of paint, as contracted for, appellant contending that the paint work of appellee Ashworth and his crew was unsatisfactory and applied in an unworkmanlike and inefficient manner, whereby the walls and interior of appellant's office building were spotted, blemished, and marred. It was not contended by appellant that the fourth coat of paint was not satisfactory in any respect on account of the material used or the workmanship. On this material issue between appellant and appellee Ashworth, above stated, there was evidence introduced by said parties in support of their respective contentions; therefore the court properly submitted special issue No. 5, and the answer there bearing strictly upon the rights of *appellant and appellee Ashworth, and being* only determinative of the question as to whether or not the paint materials applied to the walls of appellant's office building were applied in a good and workmanlike manner, was not in conflict with answer to issue No. 1.

■ The statements of witnesses introduced by appellant and appellees established the fact that the exact cause of hot spots was unknown; that, while the paint used and the workmanship might both be good, nevertheless "hot spots" may appear by reason of third factors. Coburn, appellant's architect, did not assume to say what, as a matter of fact, caused the bad results—that is, hot spots—but criticized generally the spotted condition of the walls and ceilings; he criticized both the paint and workmanship. Neither of the appellees nor appellant requested any issue to be submitted as to whether defective surfaces caused the results complained of by said architect. In what respect can it be said that there exists a conflict in the answers to special issues Nos. 1 and 5? Certainly it cannot be on the ground that the finding that good workmanship was done by appellee Ashworth destroyed the finding or was in conflict with the finding that the paint used was good material. As to what caused the hot spots com-

plained of, there was sharp disagreement in the testimony of those introduced as experts, viz.: The testimony of appellee Ashworth was in effect that he could not say definitely what caused the hot spots; there was other evidence tending to show that same could have been produced by faulty lime mixture or pulled plaster. The burden did not rest upon appellee Ashworth to show what in fact caused the hot spots to appear, but that he was free from any blame therefor, in that he had purchased the paint, as he was required to do, from appellee company, and used same in painting said office building, and that the paint was applied in a good workmanlike manner, or so accepted by appellant to have been performed. It was the duty of the trial court to consider all of the issues submitted and the answers thereto as a whole, and, if same should admit of more than one reasonable construction, the further duty devolved upon the trial judge to apply that reasonable construction that addressed itself most cogently to him.

Applying the general rule announced in the case of Elder, Dempster & Co. v. Weld Co. (Tex. Com. App.) 231 S. W. 102, 104, viz.: "It is a general rule that applies to findings of the trial court that the entire findings should be read together and construed as a whole, and that when they permit of more than one reasonable construction, that construction should be adopted which will support the action of the court as expressed in the judgment rendered upon the findings"—to the findings of the jury in the instant case, it cannot be said, even from appellant's viewpoint, that there is in fact any character of material conflict between said answers. First National Bank v. Rush (Tex. Com. App.) 246 S. W. 349, 353, in which it is held: "All the issues must be considered together as a whole. If, when construed as a whole, they admit of more than one reasonable construction, the trial court has power to apply that reasonable construction which he deems proper. * * * But if, taking all the findings together, and applying them to the contested issues in the case, they fairly dispose of those issues in the case, they fairly dispose of those issues, and are not ambiguous or conflicting, then the duty rests upon the court to enter judgment in accordance with all pertinent findings." See, also, Whitson v. Nickols (Tex. Com. App.) 12 S.W.(2d) 556, 558, in which it is held: "The verdict, taken as a whole and read with those parts of the record which ought to be consulted in its interpretation, is sufficient to exonerate defendant in error and to support a judgment in his favor." Appellant contends that the contract executed by the contractors and appellee Ashworth for the painting of appellant's office building was not a contract of agency, for the reason that Ashworth, in the pursuit of an independent business, undertook to do a specific piece of work for contractors, using his own equipment, means, and methods, without submitting himself to the control of contractors, the architect, or appellant, in respect to all of the details of the work, and being responsible to contractors for the final result.

We think the very language of said subcontract sufficient to refute this position in reference to the legal effect of same, viz.: Said contract with appellee Ashworth provided that said appellee was to install complete all the painting, finishing, and decorating the building in accordance with the architects' plans and specifications for a fixed contract price. The plans and specifications are expressly made a part of the contract. The work was to be done when required, kept apace with the progress of the building, and subject to the general contractors' supervision. Materials of appellee Peaslee-Gaulbert Company were stipulated for by the general contractor, and a surety bond was demanded of Ashworth. Work and material were to be furnished in accordance with the architects' specifications and to be approved by them. Appellee Ashworth was to be responsible for all damages arising out of his operations and was required to carry workmen's compensation and public liability insurance covering all men employed by him on the work. The bond demanded of him was to cover his faithful performance of his contract and payment of all obligations arising thereunder. Work was to start after notification by the general contractor that the building was ready for him to begin, was to be carried on with sufficient force to complete same without delay to the general contractors, and in the sequence directed by their superintendent. Under the general conditions of the specifications expressly made a part of the contract, he was required to study the specifications, and to perform his subdivision of the work in the same manner as though he were a principal. He was to comply with building laws and ordinances and be responsible for and make good any defects in his work on account of faulty material or workmanship. The work was to be delivered in clean perfect condition. He was to protect his own work from damage. These requirements applied to all branches of the work. He was to provide all labor and material necessary for the entire completion of his work, and was not to find excuse in architects' errors and omissions. He was to provide all scaffolding and appliances necessary for the proper execution of his work. The responsibility for the work and its completion was on him; no superintendence by the architects should relieve him of his responsibility nor of the consequences of neglect by himself or his crews. He was to be responsible for all damage suits in connection with his work. His workmen and superintendents were to be acceptable to the owner and the architects. His mechanics were required to be skilled in order to produce a first-class finishing of the work. Careless,

indifferent, or poor workmanship was not to be accepted by the architects. He was required to see that all surfaces were in perfect condition to receive his work; if not satisfactory, it was his duty to report his findings to the architects for correction.

██ Appellant's fifth proposition, viz. "In order for a subcontractor to recover for work performed by his crews he must show that he has complied with his contract and fulfilled same according to its requirements," states a correct abstract proposition of law. Appellant, however, omitted an important rule applicable to the state of facts before us on this issue, viz. "or must show that the work, as performed by him under his contract, was accepted by the owner as a compliance with its requirements." Ashworth's contract required him to furnish all labor and material to apply one coat of size and two coats of paint on the walls of the building, according to the plans and specifications of the architects, and subject to their approval. The work for which he sued was work done after he had applied the third coat called for and claimed performance of his contract after his work had been refused.

██ In order for Ashworth to successfully maintain his suit, it was necessary for him to establish a valuable consideration moving to appellant for its promise to pay for the fourth coat of paint; in other words, it was incumbent upon said appellee to show that, at the time the contract was made for the fourth coat of paint, he had discharged his obligation under his first contract, to apply three coats of paint, as contracted for and in accordance with the specifications prepared by appellant's architects; or that the work performed by him under said contract was accepted by appellant as a compliance with same. On this phase of the case we based our conclusion on the answers to the issues submitted and certain undisputed facts exhibited by the contracts and certain oral testimony, and have reached the conclusion that there was ample evidence upon which the trial court was authorized to find that a valid and binding contract had been made with appellee Ashworth by an authorized representative of appellant to perform the work necessary to put on the fourth coat of paint on its office building; the jury found that appellee Ashworth did his work in a good workmanlike manner; that appellant promised to pay him for the fourth coat of paint. There is no dis-

pute in the record as to the fact that the fourth coat of paint was applied, and satisfactorily so, both as to material used and workmanship. Appellant's representative, at a meeting held on March 15, 1927, between all of the parties involved in any respect in this litigation, growing out of said subcontract and the services rendered thereunder, obligated appellant, under circumstances and conditions which admit of no other reasonable construction but that appellant assumed to exercise its inherent right to disregard, and did disregard, the disapproval by its architects of appellee Ashworth's work, and elected to accept his work as having been performed in accordance with the requirements of said subcontract. This being the attitude of the parties, the consideration moving to appellant for it to pay appellee Ashworth for the labor to be performed, and which was performed, in putting on the fourth coat of paint, was that he was under no obligation to appellant to do further services under his original contract anent the three coats of paint; he having discharged himself from further obligation in that respect by having complied with his contractual duty in reference thereto. No obligation, therefore, rested upon appellee Ashworth to apply the fourth coat of paint to appellant's office building until the contract, agreeable to both appellant and appellee Ashworth, was made binding alike upon said parties for appellee Ashworth to put on the fourth coat of paint and on the part of appellant to pay Ashworth for such services. In this case, there was a bona fide dispute between appellant and appellees, which, it may be admitted, was not to either of the parties satisfactorily solved —that is, as to what was the real cause of the hot spots—however, in so far as the blame in any respect rested upon appellee company for having failed to furnish the proper material with which the paint work was performed, or upon appellee Ashworth on account of inefficient workmanship, said issues were resolved by the verdict of the jury in favor of said appellees, respectively.

We have carefully considered all of the remaining propositions presented by appellant not herein specifically discussed, and, finding no reversible error presented thereby, same are overruled, and, no reversible error being made to appear from the propositions discussed, the judgment of the trial court is in all things affirmed.

Affirmed.