## MOODY–SEAGRAVES RANCH, Inc., et al. v. BROWN et al.

### No. 9217.

Court of Civil Appeals of Texas. San Antonio.

Jan. 24, 1934.

Rehearing Denied March 28, 1934.

See, also, 59 S.W.(2d) 431.

Coke R. Stevenson, of Junction, and Herman E. Kleinecke, Jr., and McDonald & Wayman, all of Galveston, for plaintiffs in error.

Allen, Helm, Jacobs & Settegast, A. M. John, and Stewart & DeLange, all of Houston, Hirshberg, Mueller, Powell & Green, of San Antonio, Cole, Cole, Patterson & Kemper, Phil D. Woodruff, Ewing Werlein, and Rolland Bradley, all of Houston, Katherine Stephenson, of Junction, and Robert H. Rice and Henry C. King, Jr., both of San Antonio, for defendants in error.

MURRAY, Justice.

The issues involved in this suit arose in this manner.

Moody-Seagraves Company, Incorporated, was a holding company, and was in fact the parent corporation of a great number of subsidiary corporations. W. L. Moody III and O. R. Seagraves owned all of the stock of this parent corporation, each owning one-half thereof.

Some time before the controversy involved in this suit arose, O. R. Seagraves purchased more than 13,000 acres of land lying in Kerr and Kimble counties, and, while the title to this land was taken in the name of O. R. Seagraves, the ranch in truth and in fact belonged to Moody-Seagraves Company, Incorporated. Moody was the president and Seagraves the vice president of the company, and J. F. Reed was secretary-treasurer.

Seagraves decided to build a ranch home and pleasure resort on part of this ranch lying in Kerr county. The home was built, all bills were paid by the corporation, and, after final completion, Seagraves was given full title to the property; the cost having been

charged to him and taken care of by him in some satisfactory manner.

About June, 1930, Moody decided to build a ranch home, or pleasure resort, on that part of the ranch lying in Kimble county. He discussed the matter with Seagraves, who stated that he was pleased with the proposition, and Seagraves assured Moody that the company had sufficient funds on hand to finance the undertaking.

It was agreed, or at least understood, that Moody should proceed to let the contract, and that the corporation would furnish the money, pay the bills as they were presented, and charge such sums to the personal account of Moody.

J. F. Reed, who was the secretary-treasurer of the corporation, was placed in full charge of the building of this home and became the agent of the owner. Reed permitted the Northern Construction Company to build the foundation before any contract was signed; Reed selected and employed the architect, executed the construction contract, and was present at the building site most of the time, taking a very active part in superintending the work.

On October 3, 1930, the Moody-Seagraves Ranch, Incorporated, a Delaware corporation, was organized, having the same stockholders and officers as Moody-Seagraves Company, with the addition that one Wroe was made assistant secretary-treasurer of the ranch company. The ranch company was deeded the Kerr & Kimble County Ranch, in consideration of the ranch company transferring all of its capital stock to the parent corporation. This deed was dated October 20, 1930, and recorded in Kerr county December 12, 1930. It was recorded in Kimble county April 2, 1932, which was long after the completion of the Moody home.

It is clear that the home had been decided upon and the foundation built before the ranch was deeded to the ranch company. The deed was not recorded in Kerr county until much of the work on the home had been done, and not recorded in Kimble county until the home had been completed.

The contract for the house was between W. L. Moody III and Northern Construction Company. J. F. Reed signed the contract for W. L. Moody. Moody glanced over the contract, but never read it carefully.

This suit is the consolidation of two suits. After the consolidation, all parties filed new pleadings, and the suit became an action by contractors against owners for certain sums

alleged to be due them, respectively, with W. L. Moody III, as owner, asking a judgment against Northern Construction Company for certain alleged overpayments.

The plaintiffs in error are W. L. Moody III and Moody-Seagraves Ranch, Incorporated. The defendants in error are: W. B. Brown, Building Utilities, Inc., Iron Crafts, Inc., Harland S. Miller, K. F. Doerner, W. M. Nix, W. W. Thompson, Pyramid Asbestos & Roofing Company, Brown Paint Company, Johnson Motor Company, Chamberlain Metal Weather Strip Company, Martin-Wilder Company, W. H. Taylor, Davis-McHoes, Inc., and intervener, Dempster Mill Manufacturing Company.

The trial was before the court without the intervention of a jury, and at the close of all testimony the trial court, in substance, rendered a judgment as follows: (a) Disallowing the contractor's claim for $17,589.59 and gave a judgment over in favor of W. L. Moody III and Moody-Seagraves Ranch, Incorporated, against Northern Construction Company, the contractor, for $2,558.41; (b) in favor of the other contractors against W. L. Moody III and Moody-Seagraves Ranch, Incorporated, in the aggregate sum of $30,246.36, exclusive of interest; (c) in favor of intervener against Moody and Moody-Seagraves Ranch, Incorporated, for $2,106.19; (d) segregated fifty acres of the ranch surrounding the Moody house, valued it at $750, created an easement or water right in a spring on land adjoining the fifty acres, provided an easement for ingress and egress over a five-mile roadway from the house to the highway, and established and foreclosed a lien thereon for the respective amounts found to be due to the other contractors and intervener; (e) directed the issuance of an order of sale to sell the fifty acres with the easements, free of Mr. Schreiner's and Mrs. Rigsby's lien and Moody-Seagraves Ranch, Incorporated's title, and ordered that out of the proceeds of the sale $750 be paid to Mr. Schreiner and Mrs. Rigsby in settlement of their vendor's lien note, and the balance ratably applied to the judgments in favor of the other contractors and intervener; (f) denied recovery against Reed and wife, and quieted their title.

■ Defendants in error furnished labor and material for the home, and are seeking to hold the ranch company and Moody for the payment of their claims, also to establish a lien on the improvements and a portion of the ranch. To determine their rights in the premises it becomes necessary to construe the contract.

The main question to be determined is whether or not the Northern Construction Company was an independent contractor for a finished job for a certain stipulated sum, or whether or not this is a cost plus contract, in which the contractor became the agent of the owner and the owner became directly responsible to persons or firms furnishing labor and material.

The contract consisted of an agreement, general conditions agreement, and the plans and specifications. The plans and specifications do not appear in the record, so we are only concerned with the two documents, one called the agreement and the other the general conditions.

Article 4 of the agreement reads as follows:

"Fee for Services

"In consideration of the performance of the contract, the owner agrees to pay the contractor, in current funds, as compensation for his services hereunder 10% of the contract price ($————) which shall be paid as follows: fee to be made a part of each monthly estimate.

"See reverse side of this sheet for addenda to Art. 4."

The addenda to article 4 reads as follows:

"The contractor guarantees that the total contract price of all work as shown on plans and called for in specifications is not to exceed $147,683.65.

"The contractor further agrees that any saving below the above stipulated price shall revert to the owner.

"It is mutually understood and agreed that any additions other than called for in the present plans and specifications shall be entered into in writing by both parties before being added to the above mentioned contract price. This is also to be applicable to any changes made of more costly material for what are now specified and agreed upon at the time of the signing of this contract; and it is mutually understood and agreed that no credit or allowance shall be made to contractor for additional charges unless same are in writing, signed by the owner or his agent.

"It is further mutually understood and agreed that the compensation to be paid contractor by owner under this contract shall not exceed $12,500.00."

In construing the meaning of the above article, in the light of other provisions of the contract, the negotiations leading up to its execution and the manner in which the contract was treated by the parties and the manner of their operation thereunder, we conclude that article 4 was intended to fix the maximum fee which the contractor could receive under the contract, and was not intended to make the contractor an independent contractor for a finished job and responsible only to the owner for the result to be obtained. Gilbert Mfg. Co. v. Connellee (Tex. Com. App.) 265 S. W. 375; Dallas National Bank v. Peaslee-Gaulbert Co. (Tex. Civ. App.) 35 S. W.(2d) 221.

Article 7, in part, is as follows:

"Costs to be paid Direct by Owner

"In addition to items of cost noted in Article 5 for which the owner reimburses the contractor, the owner shall pay all costs as follows:

"(a) *  *  *

"(b) The amounts of all separate contracts.

"(c) *  *  *

"(d) *  *  * "

The agreement further provides:

"Art. 10 Separate Contracts

"All portions of the work that the Contractor's organization has not been accustomed to perform or that the Owner may direct, shall be executed under separate contracts let by the Owner direct. In such cases either the Contractor shall ask for bids from contractors approved by the Architect and shall deliver such bids to him, or the Architect shall procure such bids himself, and in either case the Owner shall determine, with the advice of the Contractor and subject to the approval of the Owner, the award and amount of the accepted bid. The Owner shall contract for such work direct with such approved bidders in accordance with the terms of this agreement and the General Conditions of the Contract, which Conditions shall, for the purposes of such contracts, stand as printed or written and not be subject to the modifications set forth herein.

"The Contractor, being fully responsible for the general management of the building operation, shall have full directing authority over the execution of the separate contracts.

"The separate Contractors shall not only cooperate with each other, as provided in Article 35 of the General Conditions of the Contract, but they shall conform to all directions of the Contractor in regard to the progress of the work."

It appears from article 7b and article 10, first, that they are repugnant to the idea that Northern Construction Company was an independent contractor; and, second, that, regardless of the meaning of the addenda to article 4, the owner obligated himself to pay

directly to the separate contractors the amount of their just claims.

In Gilbert Mfg. Co. v. Connellee (Tex. Com. App.) 265 S. W. 375, we find the following language: "The material issue tendered in plaintiff's petition in the trial court is whether defendant authorized the Holmboe Company [as his agent] to purchase the material furnished and agreed to [be used in his building and promised to] pay for same. If it did, he would be liable for the debt, and the mere fact that under his contract the Holmboe Company was an independent contractor in the construction of the building would not defeat his liability."

We follow this holding, and under it there can be no question but what Moody was directly responsible to all separate contractors. The only remaining question is whether or not defendants in error are separate contractors. Plaintiffs in error admit that Dempster Mill Manufacturing Company and Davis-McHoes, Inc., are separate contractors, but deny that the other defendants in error occupy that position.

■ We conclude that the other defendants in error are also separate contractors. The contract provides that all work not customarily done by Northern Construction Company is to be done by separate contracts. The record shows that all of the work done by all defendants in error was work not done by Northern Construction Company. Each defendant in error submitted an estimate to Northern Construction Company, and same was either signed or initialed by Reed before the work was done. It will be remembered that Reed was acting for Moody III. As a matter of fact, he was Moody's alter ego. We therefore hold that, under article 7b and article 10 of the contract, Moody is liable to defendants in error for the full amount of their claims.

■ The next question presented is, Were defendants in error entitled to the lien established by the judgment? We conclude that they were. It is true that the legal title to the land at the time the work was begun was in O. R. Seagraves, who was holding same as trustee for Moody-Seagraves Company. It was· later transferred to the ranch company. W. L. Moody III never at any time held title to the property upon which he built this home. However, all of the stockholders, officers, and directors of both corporations knew of the plan. Moody, the president of both companies, executed the contract; Moody-Seagraves Company advanced all the money and paid all that was paid, amounting to over $160,000. J. F. Reed, secretary-treasurer of both corporations, was on the ground and supervised the construction from beginning to almost the finish. One Wroe, who was the only paid officer of the ranch company, was on the ground and assisted in every way possible, checked pay rolls, kept books, and even let some separate contracts. Under such circumstances, the ranch company is estopped to deny that Moody owned the land upon which the improvements were placed. We conclude the trial court properly established and foreclosed the lien on the house, fifty acres of land, and the water and road easements.

■ It is contended that the pleadings are not sufficient to support the lien on the easements. The pleadings asked for much more than fifty acres of land. The fact that the trial court did not give defendants in error the land asked for, but only certain easements thereon, does not render their pleadings insufficient. The evidence was sufficient to show that the right to these easements was necessary for a proper enjoyment of the home they had helped to construct.

■■ We conclude that the personal judgment against the ranch company was not proper. Moody was not acting for the ranch company, but for himself. The ranch company could not be held upon the doctrine of undisclosed principal. The agent and the undisclosed principal cannot both be held.

The corporate fiction cannot be disregarded, for there never was any fraud or wrong undertaken or intended. As explained by W. L. Moody III, there never would have been any trouble about the matter except for the depression and his resulting financial embarrassment.

It has not been possible to mention all of the evidence bearing upon the various propositions discussed. The statement of facts is composed of some 1,800 pages, and we have been compelled to confine ourselves to what we considered some of the most important facts.

■ There was conflicting evidence on some of the facts stated, but, as this was a trial before the court, without the intervention of a jury, and no findings of fact or conclusions of law being filed, it is our duty to uphold the judgment of the trial court, if there is evidence to support his implied findings.

For the reasons above stated, it follows that plaintiffs in error's first assignment of error will be overruled; assignments of error 2 to 6 are rendered immaterial; assignments 7 and 8 are sustained; assignment 9 is overruled; assignment 10 is sustained; assignments 11 and 12 are overruled; assignment 13 is ren-

dered immaterial; assignments 14, 15, 16, 17 and 18 are overruled.

The judgment of the trial court will be affirmed, except that part which grants a personal judgment against the Moody-Seagraves Ranch, Incorporated, which will be reversed and here rendered that no personal judgment be decreed against the ranch company.

On Motions for Rehearing and to Retax Costs.

We have considered motions for rehearing filed by plaintiffs in error and defendants in error, and they will be overruled.

Defendants in error have filed motions to retax costs, which we have concluded should be granted.

 W. L. Moody III has wholly failed to justify his appeal in this case, and should pay all costs incident to this appeal, except such as were separately and independently caused by the appeal of Moody-Seagraves Ranch, Inc. We estimate the costs separately and independently caused by the Moody-Seagraves Ranch, Inc., to be $100, and this amount will be taxed against defendants in error herein. All other costs of this appeal will be taxed against W. L. Moody III.

Defendants in error's motions to retax costs will be granted and adjudged as above indicated.