Meyer GOLDBERG, T/A Chesapeake Plate and Window Glass Company, Appellant,

v.

Adolph K. BARTA, Appellee.

No. 1556.

Municipal Court of Appeals for the District of Columbia.

Argued Oct. 25, 1954.

Decided Dec. 7, 1954.

---

Herman Tocker, Washington, D. C., for appellant.

James E. Shifflette, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

This is an appeal from a finding and judgment of the lower court that appellee, Adolph K. Barta, was not obligated to pay appellant $1,375.00 for glasswork furnished and installed in appellee's home.

On November 27, 1951, appellee entered into a contract with the Manning-Winthrop Corporation, a general contractor, for the construction of a home on a cost plus fixed-fee basis. Under the terms and conditions of the contract, the general contractor was entitled to a stipulated fee of $6,500. Other pertinent articles and conditions provided:

Article 1: "The Contractor agrees to provide all the labor and materials and to do all things necessary for the proper construction and completion of the work * * *."

Article 5: "The Owner agrees to reimburse the Contractor in current funds all costs necessarily incurred for the proper prosecution of the work and paid, directly by the Contractor, * * *."

Article 9: "The Contractor, being fully responsible for the general man-agement of the building operation, shall have full directing authority over the execution of the subcontracts."

Article 22 (General Conditions): "If the Contractor should * * * persistently or repeatedly refuse or should fail, * * * to supply enough properly skilled workmen or proper material, * * * then the Owner * * * may * * * after giving the Contractor seven days' written notice, terminate the employment of the Contractor * * *."

Article 15: "* * * In case of such termination of the contract the Owner shall further assume and become liable for all obligations, commitments and unliquidated claims that the Contractor may have theretofore, *in good faith,* undertaken or incurred in connection with said work * * *." (Emphasis supplied.)

Article 36 (General Conditions): "The Contractor agrees that he is as fully responsible to the Owner for the acts and omissions of his subcontractors and of persons either directly or indirectly employed by them, * * *. Nothing contained in the contract documents shall create any contractual relation between any subcontractor and the Owner."

Article 37 (General Conditions): "The Contractor agrees to bind every Subcontractor and every Subcontractor agrees to be bound by the terms of the Agreement, * * *. Nothing in this article shall create any obligation on the part of the Owner to pay to or to see to the payment of any sums to any subcontractor."

The appellant was awarded the subcontract for the glasswork by the general contractor. When the general contractor failed to pay for this work, the subcontractor filed suit against the owner for the amount due him.

The subcontractor based his claim on two counts. The first involved the alleged breach of an agreement dated August 14,

1952, in which the owner agreed to retain a certain sum for the subcontractor before final settlement with the general contractor. The second count alleged that by virtue of the terms of the principal contract and its general conditions under which the owner terminated the contract he obligated himself to pay all sums due to subcontractors from the general contractor. The record shows that under the terms of the contract the general contractor was to submit to the architect invoices covering all materials furnished and labor performed on the owner's house; and that it was then the duty of the architect to certify that this material and work had actually been delivered and installed before the owner made any payments to the general contractor. The record shows an invoice was submitted by the general contractor on May 31, 1952, covering some 25 items totaling $4,078. Included was an item of $1,275[1] for materials and work furnished by the subcontractor and a bill from the subcontractor marked paid. This invoice was approved by the architect and sent to the owner for payment, and a check in that amount was sent to the general contractor. It developed, however, that the general contractor had not paid the subcontractor $1,275 but had given him a check for $1,000 dated May 29, which was not deposited until June 12. This check was returned to the subcontractor bearing the notation "insufficient funds." He did not notify the architect or the owner of the apparent lack of funds on the part of the general contractor until August 14. In the meantime, the owner had paid another invoice of the general contractor on July 1 for $5,222.

On July 25 the owner discharged the general contractor under Article 22 above quoted and the unfinished work was taken over by another contractor. On August 14 the subcontractor and the owner, with the approval of the architect, signed a letter which reads as follows:

"As the Glass and Glazing Contractor for your new residence in Loudoun County, Virginia, we wish to advise you that we have received no payment from Manning-Winthrop Corporation against the contract price of $1,375.00.

"We advise you to retain said sum of money for ourselves before final settlement with Manning-Winthrop Corporation. Upon your written acceptance of this notice, we will complete the unfinished portion of the contract, and any other extras you may authorize."

The architect thereafter certified that 60 per cent of the work had been completed and that the general contractor was entitled to only $3,900 of the $6,500 fixed-fee originally agreed upon. Of that amount $3,203 had been paid and credits against the balance were claimed by the owner over and above the amount due. Therefore no further payments were made by the owner to the general contractor after the letter of August 14 was signed. After the contract was terminated the general contractor went into bankruptcy.

■ The principal question involved on this appeal insofar as the first count is concerned is whether the letter of August 14 subjected the owner to legal liability to the subcontractor for the sum of $1,275 which had previously been paid to the general contractor. The trial judge, in a carefully prepared opinion, found that when the owner was notified that the subcontractor had not been paid he signed the letter of August 14 to protect the subcontractor and agreed to withhold any further payments to the contractor after that date. The court found that this letter did not represent a new promise to pay but was in effect a promise or agreement to retain that sum from any residue which might be owing to the general contractor before final settlement. However, as stated, the general contractor was dismissed and at the time of his discharge was not entitled to any further payments from the owner. Thus no money could be retained. The court found that there was no breach of the agreement as set forth in the letter of

[1]. The additional $100 demanded by the subcontractor was for materials and labor allegedly furnished at a later date.

August 14, and, therefore, there was no legal obligation on the part of the owner to pay the subcontractor. With this finding we agree.

■ The second count under which the subcontractor sought recovery was based on the termination of the contract by the owner, which termination was made under authority of Article 22 of the general conditions and Article 15 of the main agreement. Article 15 provides that when the owner terminates the services of the general contractor he becomes liable for all the obligations of the general contractor incurred in good faith. Obviously this does not mean that the owner shall be liable for obligations for which he has previously paid the general contractor; otherwise the effect would be to compel the owner to pay twice for the same obligation.

■ The subcontractor also contends that the owner is responsible because the the general contractor was the owner's agent in the transaction, and as a principal the owner is liable for debts incurred by the agent within the authority of his agency. The subcontractor cites cases involving standard American Institute of Architects cost plus fixed-fee contracts in which the general contractor was held to be an agent.[2] But he also cites similar cases from the same jurisdiction in which the contractor was held to be an independent contractor rather than an agent.[3] As all these cases point out, agency must be determined from all the facts and circumstances of the contract and the relationship of the parties. The burden of proving an agency relationship is on the party who asserts it,[4] and ordinarily under a cost plus fixed-fee contract the builder and not the owner is the person liable for the payment of subcontractors.[5]

Also, there are several different forms of American Institute of Architects standard contracts,[6] and a case dealing with one form would not necessarily be authority for determining a case involving another. The trial judge ruled that the parties were not principal and agent. With this we agree. The basic test for determining whether one is an agent or an independent contractor is one of control. In the instant case it cannot be said that the owner had sufficient control over the contractor's activities so as to make him an agent. As can be seen from the terms of the contract set out above, the general contractor was to provide all the materials and labor, and to pay for them. He was also fully responsible for the general management of the work, the execution of subcontracts, and any acts or omissions of his own employees or those of the subcontractors. Under such an arrangement, the owner does not have sufficient control over the general contractor so as to constitute him an agent. In addition, Article 36 of the general conditions states that nothing in the agreement between the owner and the general contractor shall create any contractual relationship between the owner and the subcontractors. Under Article 37 the subcontractor was bound by this condition, and in the absence of any showing of an agency relationship this condition precludes recovery under the contract by the subcontractor.

■■ In concluding its opinion, the trial court cited the equitable rule that where one of two equally innocent parties must suffer from a wrong, the one who allowed the wrong to be perpetrated must bear the loss.[7] Even if the subcontractor was an innocent party, it was certainly he who allowed the general contractor to perpetrate the wrong. As stated above, on May 29 the

2. Moody-Seagraves Ranch v. Brown, Tex. Civ.App., 69 S.W.2d 840; Dallas Nat. Bank v. Peaslee-Gaulbert Co., Tex.Civ. App., 35 S.W.2d 221; Gilbert Mfg. Co. v. Connellee, Tex.Com.App., 265 S.W. 375.

3. Carruth v. Valley Ready-Mix Concrete Co., Tex.Civ.App., 221 S.W.2d 584; Associated Indemnity Corp. v. Walnut Hill Corp., Tex.Civ.App., 220 S.W.2d 301.

4. McDonald v. Stone, D.C.Mun.App., 86 A.2d 624.

5. In re Lepri, D.C.W.D.Pa., 49 F.2d 472; 17 C.J.S., Contracts, § 370.

6. See Parker and Adams, The A. I. A. Standard Contract Forms and the Law.

7. Miller v. Logan Motor Co., D.C.Mun. App., 89 A.2d 926; Davis v. Sheriff, D.C. Mun.App., 81 A.2d 344.

subcontractor accepted a check for less than the amount due him. The check was not deposited until June 12. The subcontractor then waited until August 14 to notify the owner that he had not been paid. In the interim, the owner had paid over $5,000 to the general contractor, unaware that the subcontractor had not been paid. Under these circumstances, the trial judge was fully justified in holding that the subcontractor, rather than the owner, must suffer from the general contractor's wrongdoing.

Affirmed.