## CARRUTH v. VALLEY READY-MIX CONCRETE CO.

No. 2730.

Court of Civil Appeals of Texas. Eastland.

May 20, 1949.

Rehearing Denied June 17, 1949.

Greenwood, Johnson & Phillips, Harlingen, for appellant.

Gibbon, Coneway & Johnson, Harlingen, for appellee.

GRISSOM, Chief Justice.

Cecil Carruth had some buildings erected and repaired by J. D. Cottle and Roy Kirk, contractors. Cottle and Kirk obtained materials for the buildings from Valley Ready-Mix Concrete Company for which it was not paid and it sued Carruth and Cottle and Kirk.

Valley Ready-Mix Concrete Company, hereinafter called Valley, in the first count of its amended petition, sued Cottle and Kirk on an open account for goods, wares and merchandise sold to Cottle and Kirk, who were alleged to be building contractors working for Carruth. Valley sought judgment against Cottle and Kirk for its account and foreclosure of a materialmen's lien against the property of Carruth. In the second count Valley alleged that Carruth entered into an oral contract with Cottle and Kirk, as contractors, for the erection of buildings and improvements on property owned by Carruth; "that the contract so entered into by * * * Carruth and Cottle and Kirk, contractors, is what is commonly designated in the building occupation as a 'cost plus' contract." That thereby Cottle and Kirk, as contractors, became bound to construct said improvements and procure materials therefor. That in constructing said buildings and improvements and in purchasing materials, Cottle and Kirk acted as agents for Carruth; that Cottle and Kirk were *"by reason of said 'cost plus' contract* then and there authorized to make contracts for the purchase of material—for the construction of said houses—in the name of either—Carruth or in the name of the contractors—," and when materials were purchased by Cottle and Kirk, Carruth became bound to pay for them. (Italics ours.) Valley then alleged that, on the dates shown on the account, Cottle and

Kirk, acting as agents for Carruth, purchased said merchandise from Valley; that said materials were sold and delivered to Carruth, by and through said agents, "at the order and request of his agents, defendants Cottle and Kirk, *who were authorized under their original 'cost plus' contract to so act.*" (Italics ours.) That in furnishing the materials Valley relied on the credit of Carruth; that, thereby, Carruth and Cottle and Kirk became bound to pay plaintiff the reasonable value of the materials furnished. Valley further alleged that the materials were furnished to Cottle and Kirk, as agents for Carruth, under an oral contract with Valley and they were furnished and delivered so that they might be used in the erection and repair of certain buildings; that since Valley furnished the materials to Carruth "through (his) agents, Cottle and Kirk, there was created" a constitutional lien on said buildings.

In the third count Valley alleged that said merchandise was ordered by Cottle and Kirk for Carruth, who was then incapacitated; that same was furnished to Cottle and Kirk, as agents for Carruth, at "their" special instance and request; that Carruth knew, or should have known, the materials were furnished and delivered to his agents; that they were delivered for the benefit and enrichment of Carruth and were used in the erection of his buildings; and, therefore, Carruth was bound to pay for them.

Carruth answered that Cottle and Kirk were engaged by him as independent contractors to erect the buildings and make the repairs for cost plus 15%. He denied under oath that Cottle and Kirk were his agents. He alleged that he had over paid Cottle and Kirk; that Valley had "billed" Cottle and Kirk directly and not Carruth, for the materials and carried the account in the name of Cottle and Kirk, as independent contractors. Carruth alleged that under his contract with Cottle and Kirk, they were given the exclusive right to hire and fire necessary workmen and to buy and procure, from whatever source they desired, materials necessary for the erection or repair of his buildings and that Carruth was to reimburse Cottle and Kirk for all necessary expenses paid by them, plus 15%.

In a trial to the court, judgment was rendered for Valley against Carruth and the contractors, Cottle and Kirk, for the account and against Carruth for foreclosure of a materialmen's lien. Judgment was rendered for Carruth on his cross-action against Cottle and Kirk for $2,143.92 over payment. Carruth has appealed from the judgment against him in favor of Valley Ready-Mix Concrete Company. The case is presented here without a statement of facts.

The trial court filed the following findings of fact and conclusions of law:

"1. The firm of Cottle and Kirk, a partnership composed of J. D. Cottle and Roy Kirk, building contractors, entered into an oral contract in the early part of May, 1947, with Cecil Carruth, for the construction of a building on property belonging to Cecil Carruth. Legal description of said property being Lot 13, Block 1, of the R. J. Kroeger addition to the City of Harlingen, County of Cameron, Texas. This building is commonly called 'Oscar's Place' or the 'Nite Club' building.

"2. It was agreed and understood initially by and between the parties that the contractors were to purchase and pay for all materials and hire labor and pay for the labor and to submit weekly statements to the defendant, Cecil Carruth, for reimbursement. The defendant Cecil Carruth agreed to pay for the cost of materials, labor and like charges, and further agreed that Cottle and Kirk would be entitled to an amount equal to 15% of all materials, labor, and like charges as their compensation. The contract was what is commonly called a cost plus fee basis contract in which the cost of materials and labor plus the stipulated fee forms the basis of payment.

"3. By reason of the lack of money on the part of the contractors and due to an injury to the defendant, Cecil Carruth, which hospitalized him, the defendant, Cecil Carruth, actually paid the contractors for the labor performed and the material purchased prior to the time the materialmen were paid by the contractors and prior to the time the laborers were paid

by the contractors. The contractors would receive a check for the weekly statement from the owner, Cecil Carruth, and in turn would pay labor and materialmen. This arrangement occurred during the existence of the contract between Cecil Carruth and Cottle and Kirk.

"4. Shortly afterwards the parties entered into an oral contract on the same basis for the erection of a building on Lot 4, and the north 125 feet of Lot 3, Block 37, original townsite of the City of Harlingen, which building was commonly called the 'washateria' building, and for repairs on an apartment house located on 'First and Cleveland' Street in the City of Harlingen, and located on Lot 1, Block 4, Finwood Addition to the City of Harlingen, and for repairs on a building called Blossom Heath building.

"5. That on or about the 2nd day of May, 1947, shortly after making the contract, the defendant, Cecil Carruth, was injured and hospitalized.

"6. After the defendant, Cecil Carruth, was hospitalized the contractors, Cottle and Kirk, submitted weekly statements with summarizations for all materials purchased as reflected by invoices addressed to them and labor performed, and presented them to the defendant, Cecil Carruth, at the hospital. Cecil Carruth, without checking the weekly statements, paid the contractors, Cottle and Kirk, the total amount of material purchased and labor performed, for the week as reflected in the statements, plus 15% fee.

"7. That during the period from May 2nd to June 21st, 1947, the plaintiff, Valley Ready-Mix Concrete Co., a corporation, delivered materials to various Carruth jobs in the regular course of business at the instance of Cottle and Kirk in a total amount of $3,016.64; the charges for the materials furnished Cottle and Kirk were carried on the books of the plaintiff in one account in the name of Cottle and Kirk.

"8. Delivery tickets representing the delivery of materials actually delivered were furnished on delivery of each load of materials by the plaintiff and signed for by Cottle and Kirk or their agents, employees or servants. Twenty-four hours after delivery of materials to Cottle and Kirk delivery tickets were compiled and invoices for the delivery of the materials were sent to Cottle and Kirk. Each invoice reflected on its face the date of delivery, the name of the owner, Cecil Carruth, and the address or description of the property to where the material was delivered with the exception of two invoices. The two invoices which did not reflect the name of the owner or the place of delivery of the materials, did in fact represent materials to the improvement commonly known as 'First and Cleveland' job.

"9. That pursuant to the cost plus contract existing between Cottle and Kirk, contractors, and the owner, Cecil Carruth, the contractors received invoices from the various materialmen delivering materials to the Cecil Carruth jobs for the purpose of checking them against delivery tickets and actual deliveries to ascertain that the invoices were correct prior to submitting statements to Cecil Carruth for payment.

"10. That between May 2nd and June 12th, 1947, weekly statements were submitted by the contractors for all labor performed and materials purchased and delivered on the Cecil Carruth properties.

"11. That on or about June 12, 1947, the defendants, Cecil Carruth, was removed from the hospital to a room at the Plaza Hotel and from the hotel window he could view the progress of the work on the 'Washateria' job.

"12. On or about June 14, 1947, the defendant, Cecil Carruth, paid the weekly statement submitted to him by Cottle and Kirk but expressed dissatisfaction as to the cost of the various jobs and informed the contractors that he wanted them to furnish an itemization of all invoices for materials furnished on the various jobs and he was going to check the materials and the payrolls.

"13. On June 17, 1947, the defendant, Cecil Carruth, after completing his investigation notified the defendants, Cottle and Kirk, that he was dissatisfied with the progress of the jobs and after deliberation had decided to cancel the contract that he had with Cottle and Kirk and notified them to stop work on all of his jobs.

"14. The contractors, Cottle and Kirk, ceased work on the 'washateria' job which was in view of the defendant, Cecil Carruth, from his hotel window, but continued to perform work and purchase material on the 'Nite Club' job.

"15. That on or about July 2nd, 1947, the defendant, Cecil Carruth, was approached by one of the contractors, Roy Kirk, and told that he had to have some money for the payroll. At that time Cecil Carruth paid $600.00 to Roy Kirk. Later on in July, 1947, the said Roy Kirk entered into a contract with Cecil Carruth to complete the buildings under construction and to waive any part of the 15% fee under the original contract entered into in May.

"16. That after June 17, Cecil Carruth knew that the contractors were performing work on the 'Nite Club' job but did not object nor notify them again to stop work.

"17. On June 17th, and prior thereto, Cecil Carruth knew that plaintiff, Valley Ready-Mix Concrete Co., was furnishing materials for the Cecil Carruth jobs; that no time after June 17th did Cecil Carruth instruct the plaintiff, Valley Ready-Mix Concrete Co., not to deliver materials to Cottle and Kirk for use in his properties; that neither the defendant, Cecil Carruth, nor anyone else informed the plaintiff that Cecil Carruth had cancelled his cost plus contract with Cottle and Kirk. The plaintiff, Valley Ready-Mix Concrete Co., continued to deliver materials to the Carruth properties until June 21st, 1947, in the regular course of business without knowledge or notice of cancellation of the cost plus contract existing between Cecil Carruth as owner and Cottle and Kirk as contractors.

"18. That the contractors', Cottle and Kirk, credit rating with Valley Ready-Mix Concrete Co., on or about the 1st day of May, 1947, entitled them to credit purchases of not more than one hundred dollars.

"19. That on or about May 2nd, 1947, the contractors notified plaintiff that they had a cost plus contract with Cecil Carruth for the construction of the 'Nite Club' job and other work and desired materials.

"20. The plaintiff, Valley Ready-Mix Concrete Co., made inquiry as to the credit standing of Cecil Carruth after being told by Cottle that Cottle and Kirk had a cost plus contract with Cecil Carruth, and ascertained that the credit rating of Cecil Carruth was good, and furnished materials in the amount of $3,016.64; for the Cecil Carruth jobs in reliance on the credit rating and credit of Cecil Carruth as owner of the properties to which the materials were delivered.

"21. That it was a custom in the building and construction business in the community that in case of cost plus contracts between contractor and owners for the materialmen to address all bills and invoices to the contractor in order to give the contractor an opportunity to check the invoices against the materials delivered, and accounts were accordingly listed in the name of Cottle and Kirk, to whom such invoices had been addressed on such basis.

"22. That it was also the custom of the building and construction business in the community in the case of cost plus contracts for materialmen to list the name of the owner or the name of the improvement to which the materials are to be delivered on the face of each invoice.

"23. That on June 12th, there was due to Valley Ready-Mix Concrete Co., the sum of $1473.40 for materials furnished on Cecil Carruth jobs which were not paid for. On June 19th, the contractors paid $750.00 on account, leaving the balance of $723.40.

"24. That from June 12th to June 17th the Valley Ready-Mix Concrete Co., furnished materials for Cecil Carruth jobs in the amount of $169.80; that from June 17th to June 22nd, 1947, Valley Ready-Mix Concrete Co., furnished materials for the 'Nite Club' building in the amount of $610.-96, in reliance on the credit of Cecil Carruth and the apparent authority of Cottle and Kirk to purchase materials.

"25. That of the total amount of $3,016.-64 charged by the plaintiff for the materials furnished on the Cecil Carruth jobs which contractors Cottle and Kirk were performing and building and repairing, there is a balance due the plaintiff of $1,504.16.

"26. That the defendant, Cecil Carruth, has been benefited in the total amount of $3,016.64 by reason of the use in his build-

ings and properties of the materials furnished to Cottle and Kirk by the plaintiff, Valley Ready-Mix Concrete Co.; the defendant Cecil Carruth, never objected to the use of the Valley Ready-Mix Co. materials in his buildings prior to July 1st, 1947; that such materials were furnished with the expectation that said materials would be paid for.

"27. That the account of $1,504.16 representing the balance for materials furnished Cottle and Kirk for the Cecil Carruth jobs is just and unpaid, and that all just and lawful offsets and payments have been allowed.

"28. That Cottle and Kirk, contractors, failed to pay plaintiff, Valley Ready-Mix Concrete Co., in accordance with their contract with Cecil Carruth in this respect; That on June 14th there was due and owing Valley Ready-Mix Concrete Co. the sum of $1473.40, which sum had been paid by Cecil Carruth to the contractors, and the contractors failed and refused to pay to plaintiff, Valley Ready-Mix Concrete Co. that amount as per that amount after receiving payment from Cecil Carruth.

"29. Cottle and Kirk breached their contract in this respect: That they submitted bills from the following materialmen in the amounts due on or before the 14th day of June, 1947, as follows:

| | |
|---|---|
| Hawkins Lumber Co. | $1,950.00 |
| Valley Paint & Wallpaper | 118.62 |
| Harlingen Lumber Co. | 60.00 |
| Duke Harrison | 100.00 |
| Marchbanks Foundation Co. | 29.70 |
| Seaman's Lumber Co. | 11.52 |
| Spaeth Brothers | 26.25 |
| Washmon Sheet Metal Co. | 547.00 |
| Duke Harrison | 67.50 |
| Matz Electric Co. | 250.00 |

All of the amounts for the material and labor performed had been paid to Cottle and Kirk by the defendant, Cecil Carruth, during the various weeks of May 2nd to June 14th, but the said Cottle and Kirk failed to pay the materialmen.

"30. All of the materialmen, including the plaintiff, made demand on the defendant, Cecil Carruth, and defendant, Cecil Carruth, feeling obligated to pay the materialmen, paid all of the materialmen listed above except the plaintiff, Valley Ready-Mix Concrete Co. Written demand for payment of the total amount of the bill of $1504.61 was made on Cecil Carruth by the plaintiff or his attorneys in August, 1947, prior to the institution of this suit in February, 1948.

"31. On June 17, 1947, Cottle and Kirk furnished material and labor from June 12, to June 17, in the sum of $895.00, which sum of money Cecil Carruth failed and refused to pay to Cottle and Kirk.

"32. In July, 1947, Cecil Carruth owed the plaintiff, Valley Ready-Mix Concrete Co., a personal account.

"33. That said personal account was paid by Cecil Carruth but was not paid on condition that the Valley Ready-Mix Concrete Co. would waive any rights against Cecil Carruth for the materials furnished Cottle and Kirk on Cecil Carruth jobs.

"Conclusions of Law

"1. The Court concludes that Cecil Carruth had good cause for termination of his cost plus contract with contractors Cottle and Kirk.

"2. The Court concludes that Cottle and Kirk are not entitled to recover in any amount against Cecil Carruth.

"3. The Court concludes that Cecil Carruth is entitled to recover from Cottle and Kirk in the amount of $2143.92.

"4. The Court concludes as a matter of law that the cost plus contract between Cecil Carruth as an owner and the contractors, Cottle and Kirk, created a principal-agent relationship and the contractors were acting as an agent of the owner in the purchase of materials for the improvements on the owner's property, and that the owner, Cecil Carruth, is responsible and liable to the materialmen for all material purchased and furnished to the contractors in the construction of the 'Nite Club' job, repair of the apartment houses, construction of the 'Washateria', and repair of the Blossom Heath jobs under a cost plus contract. Gilbert Manufacturing Co. v. Connellee [Tex.Com. App.], 265 S.W. 375; Smith v. Sanders [Tex.Civ.App.], 128 S.W.2d 160; Smith v. Spencer-Sauer Lumber Company [Tex. Civ.App.], 129 S.W.2d 384; Moody-Seagraves Ranch, Inc. v. Brown [Tex.Civ.

App.], 69 S.W.2d 840; Dallas National Bank v. Peaslee Gaulbert Co. [Tex.Civ. App.], 35 S.W.2d 221.

"5. The Court concludes that in purchasing material from the plaintiff, Valley Ready-Mix Concrete Co., Cottle and Kirk were acting as agents for Cecil Carruth, and that Cecil Carruth is responsible for the amount of $723.40 (which amount Carruth had already paid to Cottle and Kirk) and also for purchases of materials made from June 12th to June 17th in the sum of $169.-80.

"6. The Court concludes that it is no defense under a cost plus contract for the owner, Cecil Carruth, to set up payment to the contractors, Cottle and Kirk, in an action by materialman, Valley Ready-Mix Concrete Co., against the owner, Cecil Carruth.

"7. The Court concludes that the owner Cecil Carruth is liable and responsible for materials furnished in the ordinary course of business to the contractors, Cottle and Kirk, after termination of the cost plus contract but before completion of the building where the owner, Cecil Carruth, knew that materials are being furnished by the materialman, Valley Ready-Mix Concrete Co., and no notification is given to the materialman of the termination of the cost plus contract.

"8. The Court concludes that where an owner as principal under a cost plus contract has placed an agent as contractors in such a position that a person of ordinary prudence, conversant with business usages and the nature of the particular business is led to believe that the agent has authority to perform acts usually done in a business of that kind, that one dealing with and agent is justified in presuming that such authority has been given. United States Code Storage [Co.] v. Richards [Tex.Civ. App.], 99 S.W.2d 697, WER.

"9. The Court further concludes that Cecil Carruth, as owner, ratified the purchase of materials after June 17th by knowingly accepting the benefits of the materials furnished by the plaintiff, Valley Ready-Mix Concrete Co., to Cottle and Kirk, as contractors, for the Cecil Carruth jobs.

"10. The Court concludes that the Plaintiff, Valley Ready-Mix Concrete Co., having given written demands more than thirty days prior to instituting suit is entitled to $20.00 for attorneys fees.

"11. The Court further concludes that judgment should be rendered against the owner, Cecil Carruth, for the full amount of the account, $1504.16, plus interest from January 1st, 1948, plus $20.00 attorneys fees, and that the plaintiff is entitled to its constitutional materialman's lien on defendant, Cecil Carruth's property and for foreclosure of same. Dallas National Bank v. Peaslee Gaulbert Co. [Tex.Civ. App.], 35 S.W.2d 221; 99 Tex.Jur. 540."

Carruth contends, among other things, that the court erred in concluding that a cost plus contract constitutes a contractor agent of the owner to purchase materials and, since Carruth had paid Cottle and Kirk for the materials and Cottle and Kirk were independent contractors and not agents of Carruth, the judgment should be reversed.

■■■■ The trial court's findings of fact and conclusions of law show conclusively that the judgment for Valley against Carruth for materials furnished by Valley to Cottle and Kirk is based solely on the court's conclusion that a cost plus contract between an owner and building contractors which, but for the cost plus feature, would have made the contractors independent contractors, as a matter of law, made such contractors agents of the owner to purchase materials for the construction and repair of the owner's buildings. In support of the foregoing conclusion, we call attention to the fact that the court found, in paragraph 2 of his findings of fact, that "it was agreed and understood initially by and between the parties that the contractors were to purchase and pay for all materials and submit weekly statements to—Carruth, for reimbursement." The court found (7) that from May 2nd to June 21st, Valley delivered materials to the Carruth jobs "at the instance of Cottle and Kirk;" that the materials were charged on Valley's books to Cottle and Kirk, and (8) the materials were delivered to and receipted for by Cottle and Kirk. (19) That on May 2nd, which was

the beginning of the transactions in question, the contractors, not Carruth, notified Valley they had a cost plus contract with Carruth and that they desired materials and (2) that Valley, after being told by Cottle and Kirk that they had a "cost plus" contract with Carruth, investigated the credit of Carruth, learned his credit was good and furnished materials for the Carruth jobs, relying on Carruth's credit rating. (26) That the materials were furnished to Cottle and Kirk by Valley and (29) that from May 2nd to June 14th Carruth paid Cottle and Kirk for all material and labor. In paragraph 17 the court found that Carruth knew Valley was furnishing materials but after June 17th Carruth failed to instruct Valley not to thereafter deliver materials to Cottle and Kirk for use in his properties and Carruth did not inform Valley that he had cancelled his cost plus contract with Cottle and Kirk. Said finding, as are many others, was wholly immaterial if Cottle and Kirk were not Carruth's agents by virtue of their cost plus contract. If Cottle and Kirk were independent contractors and not agents of Carruth, Carruth owed Valley no duty to notify it that the cost plus contract had been cancelled, Valley having furnished the materials, as found by the court, to Cottle and Kirk at their request, not Carruth's, and having delivered same to Cottle and Kirk and charged them to Cottle and Kirk. The findings indicate no statement or action by Carruth inducing the furnishing of material but, on the contrary, reveal that the furnishing of materials was induced by the request of Cottle and Kirk and Valley's erroneous belief that a cost plus contract, by virtue of its very nature, as a matter of law, made the owner liable for materials purchased by an independent contractor. Furthermore, if it is material, we call attention to the fact that only a very small per cent of the account was furnished Cottle and Kirk after termination of the cost plus contract on June 17th. As to these latter items Carruth may be liable on the theory that after June 17th Cottle and Kirk ceased to be independent contractors and became his agents to complete the building under a different contract. Furthermore, the conclusion of law in paragraph 4 states that it was the "cost plus" feature of the contract that made Cottle and Kirk agents of Carruth. The record clearly reveals that the case was tried and decided on this theory. Therefore, it must be so considered here. The court said: "the court concludes as a matter of law that the cost plus contract between Cecil Carruth as an owner and the contractors, Cottle and Kirk, created a principal-agent relationship and the contractors were acting as an agent of the owner in the purchase of materials for the improvements on the owner's property—." The court conclusively evidenced its conclusion that the cost plus feature of the contract, by its very nature, made the contractor the agent of the owner throughout its findings, for example, its conclusion of law in paragraph 6 was that under "a" cost plus contract, not this particular contract but any cost plus contract, it was no defense that the owner had paid the contractor for the materials. In its first conclusion of law, the court cited Gilbert Manufacturing Co. v. Connellee, Tex.Com.App., 265 S.W. 375. The trial court evidently relied, in the main, on the opinion in the Connellee case for its conclusion that a cost plus contract, as a matter of law, by virtue of the cost plus feature, constitutes a contractor the agent of an owner for the purchase of materials to build or repair his house.

We think that is not the law and that the Connellee case does not so hold. The Commission of Appeals in the Connellee case did hold that a person could be an independent contractor and at the same time an agent of the owner for a particular purpose. The court said: "The material issue tendered in plaintiff's petition in the trial court is whether defendant (Connellee) authorized the Holmboe Company to purchase the material furnished and agreed to pay for same." In the following paragraph the court pointed out that the written contract provided that Connellee, the owner, should pay for all material and that he should make the payments directly to the materialmen. That contract provided, among other things, that: "In the purchasing of material and in the conduct of the job, the owner is to pass finally and decide on all questions." This provision clearly does not indicate the relationship of independent contractor. The

court concluded that Connellee, having agreed to pay the materialmen for all materials furnished and authorized the contractor to procure the materials for him, made the contractor his agent to purchase materials. Contrary to the Connellee case, in the instant case the court found that the contract between Carruth and Cottle and Kirk provided that the contractors, Cottle and Kirk, were to purchase the materials and pay the materialmen. We think the Connellee case does not sustain the trial court's conclusion that a cost plus contract, as a matter of law, makes a contractor the agent of the owner for the purchase of materials. The general, if not the universal rule, appears to be to the contrary. In Moody-Seagraves Ranch, Inc. v. Brown, Tex.Civ.App., 69 S.W.2d 840, writ ref., the suit was not upon the main contract but upon a separate contract for work the contractors were not accustomed to perform and for services the owner had expressly agreed to pay for directly. The decision in Dallas National Bank v. Peaslee-Gaulbert Company, Tex.Civ.App., 35 S.W.2d 221, writ dis., and others cited by the trial court and by the appellee, are clearly distinguishable on the facts.

"Nor, as it is generally agreed, does the fact, in and of itself, that the contract calls for the payment to be made on the basis of the actual cost of the work and materials, plus an added amount or percentage for the benefit of the contractor doing the work, i. e., a 'cost plus contract,' make the relation one of principal and agent rather than a relation founded upon a independent contract." 2 Am.Jur. 18.

■ "In the absence of a contract making the owner liable, the builder, and not the owner, is generally the person liable for the compensation of subcontractors and materialmen, to the extent fixed by the terms of the contract.

"In the absence of an express contract making the owner liable, the compensation of persons who perform labor for, or furnish materials to, the builder is generally to be paid by such builder, and not by the owner, although the work is done under the direction of, and in accordance with plans furnished by, the owner's engineer; and

subcontractors and materialmen must resort for payment to the builder or contractor, as in the absence of an express contract there is no privity between a subcontractor employed by a general building contractor and the owner, and the liability of the owner is only to the general contractor who is liable to the subcontractor. This rule is particularly applicable where the builder has contracted with the owner to pay the claims of laborers and materialmen, or where there is nothing due from the owner to the builder." 17 C.J.S., Contracts, § 370, page 839.

■ "An independent contractor and an agent are not always easy to distinguish, and there is no uniform criterion by which they may be differentiated. Generally, however, the relations are distinguished by the extent of the control which the employer exercises over the employee in the manner in which he performs his work.

\*　　\*　　\*　　\*　　\*　　\*

■ "Where a contract contains provisions which, if they stood alone, would indicate that the true relation was that of independent contractor and others which indicate that the relationship was that of principal and agent, the spirit and essence of the contract, considered as a whole, must be looked to.

\*　　\*　　\*　　\*　　\*　　\*

■ "One may be an independent contractor and at the same time for certain purposes be an agent of the employer. An independent contractor becomes an agent by his employer agreeing to be responsible for obligations incurred by him in the completion of his undertaking, but payment of workmen by an owner or employer does not necessarily transform an independent contractor into an agent." 2 C.J.S., Agency, § 2, pages 1027, 1029.

The Supreme Court of North Carolina, in Economy Pumps v. F. W. Woolworth Co., 220 N.C. 499, 17 S.E.2d 639, 641, held that a cost plus contract did not constitute the builder an agent of the owner. It quoted the following from Carleton v. Foundry & Machine Products Co., 199 Mich. 148, 165 N.W. 816, 819, 19 A.L.R. 1141:

" 'We may take judicial notice that the arrangement of paying cost, plus a per-

centage as a contract price for a completed job, is growing in favor, and is becoming a common plan adopted by contractors in place of a lump sum payment. * * * The change is only in the method of computing payment. - There is no change in the relation of the parties from that which exists where the payment is a lump sum. The manner of computing payment for the completed job is not controlling; a change in this regard does not convert an independent contractor into an employe,' * * *"

In J. B. McCrary Engineering Co. v. White Coal Power Co., 4 Cir., 35 F.2d 142, 146, it was held that a cost plus contract was not inconsistent with the relationship of independent contractor and did not make such a contractor the agent of the owner. The decision of the District Court of Appeals of California, in which a hearing was denied by the Supreme Court of said State, in Crown City Lodge, I.O.O.F. No. 395, v. Industrial Accident Commission, 10 Cal.App.2d 83, 51 P.2d 143, is to the same effect.

In Allen v Republic Building Co., 84 S. W.2d 506, 509, the Dallas Court of Civil Appeals held that a cost plus contract was not inconsistent with the relationship of independent contractor and owner and did not, of itself, make the contractor the agent of the owner. The opinion of the Amarillo Court in Campbell v. Wm. Cameron & Co., Tex.Civ.App., 38 S.W.2d 865, 867, writ dis., appears to be to the same effect. In this connection see also 42 C.J.S., Independent, page 640; 2 Tex.Jur. 390; Campbell v. Jones, 60 Wash. 265, 110 P. 1083, 20 A.L.R. 671, 672, and Pooler v. Sargent Lumber Co., 113 Me. 426, 94 A. 754, L.R.A. 1915F, 1125.

The Supreme Court of Pennsylvania said in McFadden v. Pennzoil Co., 336 Pa. 301, 9 A.2d 412, 413:

"Appellant's cost-plus contract required it to pay for the labor and materials used by the McKee Company in addition to an engineering fee, but it did not establish a relation of principal and agent between the two companies. The nature of such contracts has been fully discussed in Lytle, Campbell & Co. v. Somers, Fitler & Todd Co., 276 Pa. 409, 120 A. 409, 27 A.L.R. 41,

and Brooks v. Buckley & Banks, 291 Pa. 1, 139 A. 379. The McKee Company was an independent contractor."

The Supreme Court of Wisconsin in Baumann v. City of West Allis, 187 Wis. 506, 204 N.W. 907, held that a cost plus contract created the relationship of owner and independent contractor rather than principal and agent. In Kruse v. Revelson, 115 Ohio St. 594, 155 N.E. 137, 55 A.L.R. 289, the evidence showed that Revelson agreed to pay Golden the cost of material and labor, plus $800.00, for the construction of a building. Kruse furnished labor and material under a contract with Golden, to erect Revelson's building. The court said:

"The legal question is, Do the above facts create the relationship between the defendant in error and the Golden Building Company of principal and agent, or do they create the relationship of owner and independent contractor?

"To epitomize, this was a contract between the defendant in error and the Golden Building Company, whereby the Golden Building Company, for a money consideration, the amount of a part of which was definitely fixed and the basis for the ascertainment of the balance of which was likewise definitely fixed, agreed to produce a certain result; namely, the completion of a building, without retention in the defendant in error of the power to impose his will upon the Golden Building Company in the manner of accomplishing the result. Such a contract does not create the relationship of principal and agent. We are unable to see any distinction in the relationship created by the cost plus $800 contract and the relationship that would have been created by a contract wherein the Golden Building Company had agreed to build the building for $20,800. The fact that the cost of the labor and material was not definitely determined in advance and the amount of the profit was definitely determined in advance does not distinguish the character of the contract from that of a contract where the cost is attempted to be determined in advance, since a definite basis was agreed upon by which the cost was to be ascertained.

"The fact that some of the payments for labor and material were made by the de-

fendant in error direct to the subcontractors, upon the order of the principal contractor, does not distinguish the contract from the character of contracts that pay to the principal contractor upon estimates."

The annotation "One doing work under a cost plus contract as an independent contractor, or a servant or an agent," 55 A.L.R. 291 et seq. and subsequent opinions citing the annotation, show that the established rule is that a cost plus contract does not, of itself, make an independent contractor the agent of the owner of a building for the purchase of materials for its erection or repair.

Since the trial court's conclusion that Cottle and Kirk were the agents of Carruth in purchasing materials from Valley, manifestly, depends solely upon its conclusion that a cost plus contract, by virtue of its nature, created such agency, we cannot presume, under Texas Rules of Civil Procedure, rule 299, that the court based its judgment on some unknown but presumed finding of fact that would support the judgment. See Warren v. Haverkorn, Tex.Civ.App., 191 S.W.2d 793, 797.

It does not appear that the case has been fully developed. We are of the opinion that it was tried upon an erroneous theory. The judgment is, therefore, reversed and the cause remanded.