**In re Rocco PERCIAVALLE and Carol J. Perciavalle, Individually and as Former Officers and Directors of L/P's Feed & Seed Co., Inc. and the Tanning Place, DEBTORS.**

**Bankruptcy No. 87–53315–A.**

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

May 25, 1988.

Martin W. Seidler, Law Offices of Martin W. Seidler, San Antonio, Tex., for debtors.

John Patrick Lowe, Uvalde, Tex., trustee.

### MEMORANDUM OPINION

R. GLEN AYERS, Jr., Chief Judge.

This Court has jurisdiction over this matter as a core proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157.

This case comes before the Court on the Trustee's Objection to Debtor's Claim of Exempt Property. The sole issue that this Court will consider is whether insurance renewal commissions are current wages and thus exempt personal property or whether these commissions are continuing payments for services rendered by an independent contractor and therefore not exempt.

In 1976 and 1985 Rocco Perciavalle entered into two contracts with The Northwestern Mutual Life Insurance Company ("Northwestern"). He became a General Agent and later a District Agent for the company. See Exhibits "A" & "B". These contracts governed Mr. Perciavalle's conduct during the entire time he sold policies underwritten by Northwestern. Mr. Perciavelle ceased to be an agent (and ceased to sell policies) for Northwestern at a time prior to his filing for relief under Chapter 7 of the Bankruptcy Code. On the date Mr. Perciavalle ceased to be an agent for Northwestern, the two contracts terminated by their own design. The contracts provided for the subsequent payment of commissions for policies sold by Mr. Perciavalle upon which Northwestern continued to receive renewal premiums on. See Exhibit "A" at ¶ 28 and "B" at ¶ 21. These insurance renewal commissions are the subject of this dispute.

The Bankruptcy Code allows an individual Chapter 7 Debtor to select state or federal exemptions when claiming exempt property. See 11 U.S.C. § 522(b)(2)(A). Under the Texas statute the debtor has numerous exemptions which he may claim, one being current wages for personal services. See Tex.Prop.Code Ann. § 42.002(8) (Vernon 1984). In the case at hand, the Perciavalles have chosen the Texas exemptions. They claim the insurance renewal commissions from Northwestern as current wages for personal services and, therefore, exempt personal property. Naturally, the Trustee of the estate claims that this money is compensation paid to Mr. Perciavalle in his capacity as an independent contractor and thus, not exempt property.

In order to categorize these payments as exempt or not exempt, it must first be determined whether Mr. Perciavalle's affiliation with Northwestern was that of an employee or independent contractor.

Since the Perciavalles, as Debtors, elected to claim the exemptions available under Texas statute this Court must follow Texas state law in resolving this issue. See Butner v. United States, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1978). The Texas Courts define "current wages", as used in section 42.002(8) of the Property Code, to be compensation due to an employee in a master-servant relationship. The definition expressly excludes money received by an independent contractor. See, e.g., Hennigan v. Hennigan, 666 S.W.2d 322, 324 (Tex.Civ.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.); Pitts v. Dallas Nurseries Garden Center Inc., 545 S.W.2d 34, 36 (Tex.Civ.App.—Texarkana 1976, no writ); Brasher v. Carnation Co., 92 S.W.2d 573, 574–75 (Tex.Civ.App.—Austin 1936, writ dism'd). Therefore, if this Court determines that Mr. Perciavalle was an employee of Northwestern, the insurance renewal commissions will become cur-

rent wages and will be exempt property. However, if it is ascertained that he was an independent contractor, these payments will become non-exempt receivables and part of the bankruptcy estate.

In determining the status of Mr. Perciavalle during his tenure with Northwestern, this court must apply the test originally set forth in *Cunningham v. International RR. Co.*, 51 Tex. 503, which has been followed and expanded by the Texas courts. In its basic form, the test states:

> "Whether the employer exercises, or reserves the right to exercise, control and direction not merely of the end sought to be obtained but also the details of its accomplishment; not only what shall be done but how it shall be done, if he does, then the relationship of employer and employee exist. If on the other hand, the employer or contractor is interested only in the results, and there is left to the party performing such service complete control control of the details as to the method and manner of such performance, then the relationship of independent contractor exists."

*First National Bank of Fort Worth v. Bullock*, 584 S.W.2d 548, 551–52 (Tex.Civ. App.—Austin 1979, no writ); *see also Davidson Texas, Inc. v. Garcia*, 664 S.W.2d 791, 794 (Tex.App.—Austin 1984, writ ref'd n.r.e.). *Shahan v. Biggs*, 123 S.W.2d 686, 688 (Tex.Civ.App.—Fort Worth 1938, no writ); *Brasser* 92 S.W.2d at 575.

An insurance agent is generally left to his own devices in soliciting potential insurees. Mr. Perciavalle was given a territory by Northwestern and left to exercise his own independent judgment as to the manner he used in generating business. There was no evidence to show that Northwestern ever attempted to alter Mr. Perciavalle's behavior. Under certain conditions, Northwestern even allowed Mr. Perciavalle to sell insurance underwritten by another company. *See* Exhibit "A" at ¶ 6 & "B" at ¶ 6. In the contracts and in a subsequent letter Northwestern asserted that its General Agents and District Agents are independent contractors. Northwestern went on to say "nothing herein shall be construed to make the District Agent an employee of the Company or General Agent". Exhibit "A" at ¶ 4 and "B" at ¶ 4. Paragraph 4 clearly stated that Mr. Perciavalle's professional relationship with Northwestern would be that of an independent contractor. Also in paragraph 4, Northwestern reserved the right to adopt regulations regarding the conduct of its agents, but stated that it would not interfere with their freedom of action. *See* Exhibit "A" at ¶ 4 and "B" at ¶ 4.

Such a restraint, however can not defeat the independent contactor status. In *Carruth v. Valley Ready–Mix Concrete Co.*, 221 S.W.2d 584, 593 (Tex.Civ.App.—Eastland 1949, writ ref'd), the court stated that where part of the contract points to an independent contractor relationship and part implies an employee relationship, the essence of the contract must be considered. The reservation contained in paragraph 4 merely ensured an agent's adherence to current and future broad company regulations. Looking at the contract as a whole, this court finds Northwestern never intended for Mr. Perciavalle to be anything other than an independent contractor.[1]

---

1. By having all of its agents operating as independent contractors, Northwestern does not have to concern itself with those burdens normally associated with being an employer. The Court suspects the basic reason that Northwestern and other insurance companies establish their agents as independent contractors and not as employees is to insulate themselves from as much potential tort and contract liability as possible (although there may be certain tax and other benefits.) To illustrate, when a tort claim arises from actions taken by an employee, the employer may be held liable under the theory of respondent superior. *See Knutson v. Morton Foods*, 580 S.W.2d 876, 877 (Tex.Civ.App.—Texarkana 1979), *aff'd* 603 S.W.2d 805. However, when the relationship between the parties is that of an independent contractor, the company is shielded from most the of the liability arising out of the independent contractors actions. *See id.* at 877.

The point of this elementary lesson is to show that the status "employee" and the status "independent contractor" are each created to satisfy real or perceived legal needs of the employer and should have nothing to do whether or not sums due from the employer to employee/contractor are exempt.

In conclusion, the contract expressly stated that Mr. Perciavalle was an independent contractor engaged by Northwestern to sell insurance policies. The restrictions placed on him, territorial boundaries and certain company policy considerations, were minimal. The time, place, and basic manner for selling the policies were left entirely up to Mr. Perciavalle. In addition, Northwestern never exercised any control over Mr. Perciavalle's day to day activities.

For the reasons set forth in the above opinion, this Court rules in favor of the Trustee and finds that Mr. Perciavalle was an independent contractor. Therefore, his insurance renewal commissions are not wages for current services and are not exempt under section 42.002(8) of the Texas Property Code.

---

## EXHIBIT A

[Page 1]

# GENERAL AGENT'S CONTRACT

● THE NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY • MILWAUKEE [NML]

720 East Wisconsin Avenue, Milwaukee, Wisconsin 53202

---

The Northwestern Mutual Life Insurance Company (the "Company") and ___Rocco V. Perciavalle___

_____ (the "General Agent") agree as follows:

**1. Effective Date** — This agreement shall take effect on

___September 1, 1976___

### AUTHORITY OF GENERAL AGENT

**2. Territory** — General Agent is hereby appointed a general agent of the Company within _____

___See Page 5___

(the "Territory"). The Company reserves the right to withdraw at any time the whole or any part of the Territory, or to appoint additional general agents in the Territory.

**3. Open Territory Solicitation** — (a) General Agent agrees that all other general agents and all persons holding currently effective Agency contracts under them may solicit Applications for policies and contracts anywhere in his Territory and submit such Applications through their respective general agents. General Agent and all persons holding currently effective Agency contracts under him shall have the same rights in all other territories. Such solicitation shall be in accordance with regulations issued by the Company from time to time.

(b) Whenever General Agent wishes to solicit an Application in an area outside the Territory he must secure through the Company an agent's license from the proper state authority.

**4. Relationship** — General Agent shall be an independent contractor and nothing herein shall be construed to create the relation of employer and employee between the Company and General Agent. General Agent shall be free to exercise his own judgment as to the persons from whom he will solicit Applications and the time, place and manner of solicitation, but the Company from time to time may adopt regulations respecting the conduct of the general agency, not interfering with such freedom of action of General Agent.

**5. Alteration of Policies** — General Agent shall have no power, personally or on behalf of the Company, to waive any forfeiture or to alter or discharge or waive any of the terms and conditions of any policy or contract.

**6. Exclusive Dealing** — (a) General Agent shall do no business for any other company which issues annuity contracts, or life insurance or disability income insurance policies, except in connection with Applications with respect to persons who are then insured by the Company to the limit which it will issue on them, or who are otherwise not acceptable for insurance by the Company, or who have been found by the Company to be insurable only at higher than standard premium rates which are unacceptable to the applicants.

(b) The requirement of 6(a) is waived for Applications for life insurance policies personally solicited by General Agent if he commenced his present term of Continuous Service prior to January 1, 1956, and is also waived for Applications personally solicited by any Agent under contract with General Agent if such Agent commenced his present term of Continuous Service prior to January 1, 1956, provided such Application is for insurance acceptable by the Company only at rates higher than the standard rates.

**7. Contracts with Agents** — General Agent, subject to the approval of the Company, is authorized to appoint and contract with Agents to carry out the purposes of this agreement.

**8. Surplus Business** — General Agent may accept surplus business from a duly accredited agent of another company, where the applicant has the limit of insurance which such other company will issue and retain on his life and pay the commissions on such surplus business in accordance with arrangements made for its acceptance.

**9. No Brokerage** — Except as provided in Paragraph 8, General Agent shall pay no commission to any person unless an Agency contract has been entered into with him, the necessary agent's license has been secured, and his name has been properly entered as Solicitor or "District Agent" or "Field Director" on the Agent's Certificate of the Application.

### DUTIES OF GENERAL AGENT

**10. General Duties** — General Agent personally and through Agents shall thoroughly develop all the Territory and shall procure the issuance of insurance policies and annuity contracts in an amount and on a number of lives satisfactory to the Company. He shall not engage in any business other than that covered by this agreement except with the consent of the Company.

**11. Office** — General Agent shall equip and maintain a suitable office in the city of _____
___Oklahoma City, Oklahoma___
for the transaction of the business of the general agency created by this agreement.

interest on non-contingent settlement option balances as certified by the Actuary of the Company, and shall be credited by the Company to the Account at least annually. Amounts standing to the credit of the Account shall be carried as an indebtedness of the Company payable in accordance with (b) of this provision. General Agent shall have no interest in the Account, which is established merely as an accounting convenience and shall not operate to segregate any balance therein from the general assets of the Company.

(b) The Company shall, subject to the provision for setoff in Paragraph 30, make payments from the Account to General Agent, in monthly installments in the amount, and for the number of years, elected by General Agent prior to the aforesaid termination. The elected number of years shall be 15 or 20 or such other number of years as may be permitted by the Company at the time of election. Installments shall commence within 60 days after the aforesaid termination and shall be payable monthly thereafter, but no such installment shall exceed the balance in the Account at the time such installment is payable. In the event this agreement is terminated by General Agent's death or his death occurs thereafter, payments pursuant to the terms of this provision shall be made in like manner in accordance with Paragraph 26. All payments pursuant to (b) of this provision shall be charged against the Account.

(c) General Agent shall have no power to assign, encumber, commute or anticipate his interest in any amounts standing to the credit of the Account or in any payment pursuant to (b) of this provision.

(d) Commissions accrued upon termination of this agreement and thereafter accruing, shall be valued by application of the Evan's Commission Valuation Table elected by General Agent, without interest.

26. Beneficiaries — (a) General Agent shall have the right to designate beneficiaries to receive commissions, fees and other remuneration accrued at his death and thereafter accruing. Any such designation of beneficiaries shall be subject to the following provisions:

   (i) CLASSES — Beneficiaries shall be of the same classes as provided in life insurance policies of the series issued by the Company on the date of this agreement.

   (ii) SUCCESSION — The succession in interest of the beneficiaries shall be as stated in the Settlement Option Provisions of life insurance policies of said series. If no beneficiary is designated or if no beneficiary survives General Agent, amounts accrued at General Agent's death and thereafter accruing shall be paid to his executor or administrator or to the persons entitled thereto under applicable law.

   (iii) WHEN EFFECTIVE — All designations, revocations and changes in beneficiaries shall be duly made in writing and shall be effective upon receipt at the Home Office of the Company.

   (iv) ASSIGNMENT — No assignment by General Agent of his rights hereunder shall require the consent of any beneficiary, and the interest of any beneficiary shall be subject to any such assignment.

(b) General Agent shall accord to each Agent appointed by him pursuant to Paragraph 7 a privilege equivalent to

that set forth in Paragraph 26(a), as to any commissions, fees or other remuneration due from General Agent to such Agent after the Agent's death.

## TERMINATION

27. Term of Agreement — This agreement shall terminate upon the date of the death of General Agent, or at the end of the month in which General Agent has attained age 65, whichever shall first occur. It may be terminated:

(a) by General Agent at any time, and by the Company after the first three Contract Years, without cause, in either case upon not less than thirty day's written notice.

(b) by the Company at any time upon written notice to General Agent, by reason of:

   (i) Legislation, court decision or insurance department or other governmental ruling or requirement which in the opinion of the Company either contravenes any provisions of this agreement or renders it expedient for the Company to withdraw from the whole or any part of the Territory; or

   (ii) Failure of General Agent to comply with any of the terms hereof; or

   (iii) General Agent's becoming, in the opinion of the Company (of which it shall be the sole judge) incapacitated for any reason so that he cannot fully perform this agreement.

Termination by the Company shall be effected only by action of the Executive Committee of its Board of Trustees. Termination shall not operate to discharge or satisfy any claim of the Company against General Agent. See letter agreement of September 1, 1976

28. Commissions after Termination — Termination of this agreement shall not affect commissions subsequently payable to General Agent, except that:

(a) If this agreement is terminated by the Company for General Agent's failure to comply with any of the terms hereof, the commissions payable to him on all renewal premiums collected after termination shall be reduced by 1% of such premiums; and

(b) If on termination of this agreement General Agent has less than 15 years of Continuous Service, the renewal commissions which he would otherwise receive and retain after this termination by reason of his name appearing as Solicitor on the Agent's Certificate shall be payable as follows:

| Complete Years Of Continuous Service | Policy Years For Which Renewal Commissions Are Payable |
| --- | --- |
| 0-9 | 2nd thru 4th |
| 10 | 2nd thru 5th |
| 11 | 2nd thru 6th |
| 12 | 2nd thru 7th |
| 13 | 2nd thru 8th |
| 14 | 2nd thru 9th |

provided, however, that

   (i) If this agreement is terminated by General Agent's death or by the Company because they have deemed him incapacitated, or if it is terminated after the General Agent attains the age of 60, the number of policy years for which renewal commissions are payable shall not be reduced, and

   (ii) If General Agent continues under full-time Agency

[Page 5]

## TERRITORY

The Counties of Alfalfa, Beckham, Blaine, Caddo, Canadian, Carter, Cleveland, Comanche, Cotton, Custer, Dewey, Ellis, Garfield, Garvin, Grady, Grant, Greer, Harmon, Harper, Jackson, Jefferson, Kay, Kingfisher, Kiowa, Lincoln, Logan, Love, McClain, Major, Murray, Noble, Oklahoma, Payne, Pontotoc, Pottawatomie, Roger Mills, Stephens, Tillman, Washita, Woods, and Woodward, in the State of Oklahoma.

## EXHIBIT B

[Page 1]

# DISTRICT AGENT'S CONTRACT

**Northwestern Mutual Life**

Northwestern Mutual Life Insurance Company · Milwaukee

_____ Jonn J. Stola _____, a general

agent of The Northwestern Mutual Life Insurance Company, hereinafter called "General Agent," and _____

Rcccc V. Perciavalle _____ of _____ Oklahoma City _____, in the County of

Oklahoma _____, and State of ____ OK _____, hereinafter called "District Agent," agree as follows:

**1. Effective Date** — This agreement shall take effect on

May 1, 1956 .

#### AUTHORITY OF DISTRICT AGENT

**2. Territory** — District Agent, personally and through agents appointed by him, shall solicit Applications for insurance policies and annuity contracts issued by The Northwestern Mutual Life Insurance Company (the "Company") within

The Counties of Canadian, Cleveland, McClain, Oklahoma and Pottawatomie in the State of OK

Also Counties of Kingfisher, Logan, Garfield and Major in the State of Oklahoma

_____ (the "Territory").

**3. Open Territory Solicitation** — (a) District Agent agrees that all persons holding currently effective Agency contracts may solicit Applications for policies and contracts anywhere in his Territory and submit such Applications through their respective general agents. District Agent and all persons holding currently effective Agency contracts under him shall have the same rights in all other territories. Such solicitation shall be in accordance with Regulations issued by the Company from time to time.

(b) Whenever District Agent wishes to solicit an Application in an area outside the Territory he must secure through the Company an agent's license from the proper state authority.

**4. Relationship** — District Agent shall be an independent contractor and nothing herein shall be construed to make District Agent an employee of the Company or General Agent. District Agent shall be free to exercise his own judgment as to the persons from whom he will solicit Applications and the time, place and manner of solicitation, but the Company from time to time may adopt regulations respecting the conduct of the business covered hereby, not interfering with such freedom of action of District Agent.

**5. Alteration of Policies** — District Agent shall have no power, personally or on behalf of the Company or General Agent, to waive any forfeiture or to alter or discharge or waive any of the terms and conditions of any policy or contract.

**6. Exclusive Dealing** — (a) District Agent shall do no business for any other company which issues annuity con-

tracts, or life insurance or disability income insurance policies, except in connection with Applications with respect to persons who are then insured by the Company to the limit which it will issue on them, or who are otherwise not acceptable for insurance by the Company, or who have been found by the Company to be insurable only at higher than standard premium rates which are unacceptable to the applicants.

(b) The requirement of 6(a) is waived for Applications for life insurance policies personally solicited by District Agent if he commenced his present term of Continuous Service prior to January 1, 1956, and is also waived for Applications personally solicited by any Agent under contract with District Agent if such Agent commenced his present term of Continuous Service prior to January 1, 1956, provided such Application is for insurance acceptable by the Company only at rates higher than the standard rates.

**7. Contracts with Agents** — District Agent, subject to the approval of General Agent and the Company, is authorized to appoint and contract with Agents to carry out the purposes of this agreement.

**8. No Brokerage** — District Agent shall pay no commission to any person unless an Agency contract has been entered into with him, the necessary agent's license has been secured, and his name has been properly entered as Solicitor or "Field Director" on the Agent's Certificate of the Application.

#### DUTIES OF DISTRICT AGENT

**9. General Duties** — District Agent personally and through Agents shall thoroughly develop all the Territory and shall procure the issuance of insurance policies and annuity contracts in an amount and on a number of lives satisfactory to General Agent and at least equal to the minimum requirements established by the Company for licensure. He shall collect the initial premiums on such policies and contracts. He shall not engage in any business other than that covered by this agreement except with the consent of General Agent.

**10. Responsibility** — District Agent shall be responsible to General Agent and the Company for all business done by or entrusted to the persons appointed or employed by him. He shall indemnify and save General Agent and the Company harmless from any and all expenses, costs, causes of action and damages resulting from or growing out of acts or transactions by himself, his employees, his agents or persons appointed by him.

**11. Remittances** — District Agent shall be responsible to General Agent and the Company for all amounts received

(iv) ASSIGNMENT — No assignment by District Agent of his rights hereunder shall require the consent of any beneficiary, and the interest of any beneficiary shall be subject to any such assignment.

(b) District Agent shall accord to each Agent appointed by him pursuant to Paragraph 7 a privilege equivalent to that set forth in Paragraph 19(a), as to any commissions, fees or other remuneration due from District Agent to such Agent after the Agent's death.

## TERMINATION

**20. Term of Agreement** — This agreement shall terminate upon the first to occur of the following:

(a) The death of District Agent;

(b) Termination of the present contract between General Agent and the Company (except as such contract may be extended through an Endorsement by the Company, in which case this agreement shall terminate upon expiration of the extension); or

(c) The end of the month in which District Agent attains age 65.

It may be terminated by General Agent upon written notice to District Agent, by reason of

(i) Legislation, court decision or insurance department or other governmental ruling or requirement which in the opinion of the Company either contravenes any provision of this agreement or renders it expedient for the Company to withdraw from the whole or any part of the Territory; or

(ii) Failure of District Agent to comply with any of the terms hereof; or

(iii) District Agent's becoming, in the opinion of General Agent and the Company (of which they shall be the sole judges) incapacitated for any reason so that he cannot fully perform this agreement.

It may be terminated by either party at any time, without cause, upon 30 days' written notice.

**21. Commissions After Termination** — Termination of this agreement shall not affect commissions subsequently payable to District Agent, except that:

(a) If on termination of this agreement District Agent has less than 15 years of Continuous Service, the renewal commissions which he would otherwise receive and retain after this termination by reason of his name appearing as Solicitor on the Agent's Certificate shall be payable as follows:

| Complete Years Of Continuous Service | Policy Years For Which Renewal Commissions Are Payable |
|---|---|
| Less Than 2 | None |
| 2-9 | 2nd thru 4th |
| 10 | 2nd thru 5th |
| 11 | 2nd thru 6th |
| 12 | 2nd thru 7th |
| 13 | 2nd thru 8th |
| 14 | 2nd thru 9th |

provided, however, that:

(i) If termination was caused by District Agent's death or by his becoming incapacitated, in the opinion of General Agent and the Company (of which they shall be the sole judges), or if District Agent had at least 2 years of Continuous Service and termination occurred after attainment of age 60, the number of policy years for which renewal commissions are payable shall not be reduced; and

(ii) If District Agent continues under a full-time Agency contract or becomes an employee of the Company, the number of such renewals shall not be reduced so long as such status continues.

(b) If renewals are not payable to District Agent because of his termination with less than 2 years of Continuous Service, such renewals arising from second, third and fourth policy year premiums shall be retained by General Agent and those arising from fifth and subsequent policy years shall be retained by the Company.

(c) If termination of this agreement was for violation of Paragraphs 6, 8, 11 or 15, then in addition to any reductions set forth in other portions of this Paragraph 21 there shall be deducted from all commissions otherwise payable on renewal premiums collected after such termination 1% of such premiums.

(d) Except as set forth in Subparagraphs (a), (b) and (c) above, District Agent's right to commissions shall not be affected by termination of this agreement.

## GENERAL

**22. Setoff** — General Agent or the Company may at any time set off against any commissions or other remuneration due or to become due under this or any prior agreement to District Agent, or anyone claiming through or under him, any debt or debts due from District Agent to General Agent or the Company.

**23. No Waiver** — No forbearance or neglect on the part of General Agent or the Company to enforce any of the provisions of this agreement shall be construed as a waiver of any of his or its rights or privileges hereunder or affect his or its rights arising from any default or failure of performance by District Agent.

**24. Notice** — Any notice required by this agreement shall be in writing, and shall be delivered in person or by mail to the party at his last known post office address.

**25. No Assignment** — This agreement is not transferable. Except for the designation of beneficiaries, as provided in Paragraph 19 and subject to the limitations of Paragraph 18(c), no rights or interests arising hereunder shall be assignable without the Company's prior written consent.

**26. Definitions** — The following terms shall have the indicated meanings:

(a) APPLICATION — an application to the Company for an annuity contract, life insurance policy, or disability income insurance policy.

(b) CONTRACT YEAR — a period of one year commencing on the effective date of this agreement or any anniversary thereof.

(c) CONTINUOUS SERVICE — the total continuous time served in the employ of the Company, under leave of absence in the armed forces of the United States and under any Agency contract. Any intervals of not more than 2 months, and any interval of not more than 6 months immediately following such military leave of absence, shall be included. Service as a part-time agent shall be included only if it is immediately followed by entering into a full-time Agency contract or employment by the Company.