92 B.R. 688 (1988)
In re Rocco PERCIAVALLE and Carol J. Perciavalle, Individually and as Former Officers and Directors of L/P's Feed & Seed Co., Inc. and the Tanning Place, DEBTORS.
Bankruptcy No. 87-53315-A.
United States Bankruptcy Court, W.D. Texas, San Antonio Division.
May 25, 1988.
*689 Martin W. Seidler, Law Offices of Martin W. Seidler, San Antonio, Tex., for debtors.
John Patrick Lowe, Uvalde, Tex., trustee.

MEMORANDUM OPINION
R. GLEN AYERS, Jr., Chief Judge.
This Court has jurisdiction over this matter as a core proceding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157.
This case comes before the Court on the Trustee's Objection to Debtor's Claim of Exempt Property. The sole issue that this Court will consider is whether insurance renewal commissions are current wages and thus exempt personal property or whether these commissions are continuing payments for services rendered by an independent contractor and therefore not exempt.
In 1976 and 1985 Rocco Perciavalle entered into two contracts with The Northwestern Mutual Life Insurance Company ("Northwestern"). He became a General Agent and later a District Agent for the company. See Exhibits "A" & "B". These contracts governed Mr. Perciavalle's conduct during the entire time he sold policies underwritten by Northwestern. Mr. Perciavelle ceased to be an agent (and ceased to sell policies) for Northwestern at a time prior to his filing for relief under Chapter 7 of the Bankruptcy Code. On the date Mr. Perciavalle ceased to be an agent for Northwestern, the two contracts terminated by their own design. The contracts provided for the subsequent payment of commissions for policies sold by Mr. Perciavalle upon which Northwestern continued to receive renewal premiums on. See Exhibit "A" at ¶ 28 and "B" at ¶ 21. These insurance renewal commissions are the subject of this dispute.
The Bankruptcy Code allows an individual Chapter 7 Debtor to select state or federal exemptions when claiming exempt property. See 11 U.S.C. § 522(b)(2)(A). Under the Texas statute the debtor has numerous exemptions which he may claim, one being current wages for personal services. See Tex.Prop.Code Ann. § 42.002(8) (Vernon 1984). In the case at hand, the Perciavalles have chosen the Texas exemptions. They claim the insurance renewal commissions from Northwestern as current wages for personal services and, therefore, exempt personal property. Naturally, the Trustee of the estate claims that this money is compensation paid to Mr. Perciavalle in his capacity as an independent contractor and thus, not exempt property.
In order to categorize these payments as exempt or not exempt, it must first be determined whether Mr. Perciavalle's affiliation with Northwestern was that of an employee or independent contractor.
Since the Perciavalles, as Debtors, elected to claim the exemptions available under Texas statute this Court must follow Texas state law in resolving this issue. See Butner v. United States, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1978). The Texas Courts define "current wages", as used in section 42.002(8) of the Property Code, to be compensation due to an employee in a master-servant relationship. The definition expressly excludes money received by an independent contractor. See, e.g., Hennigan v. Hennigan, 666 S.W.2d 322, 324 (Tex.Civ.App.  Houston [14th Dist.] 1984, writ ref'd n.r.e.); Pitts v. Dallas Nurseries Garden Center Inc., 545 S.W.2d 34, 36 (Tex.Civ.App.  Texarkana 1976, no writ); Brasher v. Carnation Co., 92 S.W.2d 573, 574-75 (Tex.Civ.App.  Austin 1936, writ dism'd). Therefore, if this Court determines that Mr. Perciavalle was an employee of Northwestern, the insurance renewal commissions will become current *690 wages and will be exempt property. However, if it is ascertained that he was an independent contractor, these payments will become non-exempt receivables and part of the bankruptcy estate.
In determining the status of Mr. Perciavalle during his tenure with Northwestern, this court must apply the test originally set forth in Cunningham v. International RR. Co., 51 Tex. 503, which has been followed and expanded by the Texas courts. In its basic form, the test states:
"Whether the employer exercises, or reserves the right to exercise, control and direction not merely of the end sought to be obtained but also the details of its accomplishment; not only what shall be done but how it shall be done, if he does, then the relationship of employer and employee exist. If on the other hand, the employer or contractor is interested only in the results, and there is left to the party performing such service complete control control of the details as to the method and manner of such performance, then the relationship of independent contractor exists."

First National Bank of Fort Worth v. Bullock, 584 S.W.2d 548, 551-52 (Tex.Civ. App.  Austin 1979, no writ); see also Davidson Texas, Inc. v. Garcia, 664 S.W.2d 791, 794 (Tex.App.  Austin 1984, writ ref'd n.r.e.). Shahan v. Biggs, 123 S.W.2d 686, 688 (Tex.Civ.App.  Fort Worth 1938, no writ); Brasser 92 S.W.2d at 575.
An insurance agent is generally left to his own devices in soliciting potential insurees. Mr. Perciavalle was given a territory by Northwestern and left to exercise his own independent judgment as to the manner he used in generating business. There was no evidence to show that Northwestern ever attempted to alter Mr. Perciavalle's behavior. Under certain conditions, Northwestern even allowed Mr. Perciavalle to sell insurance underwritten by another company. See Exhibit "A" at ¶ 6 & "B" at ¶ 6. In the contracts and in a subsequent letter Northwestern asserted that its General Agents and District Agents are independent contractors. Northwestern went on to say "nothing herein shall be construed to make the District Agent an employee of the Company or General Agent". Exhibit "A" at ¶ 4 and "B" at ¶ 4. Paragraph 4 clearly stated that Mr. Perciavalle's professional relationship with Northwestern would be that of an independent contractor. Also in paragraph 4, Northwestern reserved the right to adopt regulations regarding the conduct of its agents, but stated that it would not interfere with their freedom of action. See Exhibit "A" at ¶ 4 and "B" at ¶ 4.
Such a restraint, however can not defeat the independent contactor status. In Carruth v. Valley Ready-Mix Concrete Co., 221 S.W.2d 584, 593 (Tex.Civ.App.  Eastland 1949, writ ref'd), the court stated that where part of the contract points to an independent contractor relationship and part implies an employee relationship, the essence of the contract must be considered. The reservation contained in paragraph 4 merely ensured an agent's adherence to current and future broad company regulations. Looking at the contract as a whole, this court finds Northwestern never intended for Mr. Perciavalle to be anything other than an independent contractor.[1]
*691 In conclusion, the contract expressly stated that Mr. Perciavalle was an independent contractor engaged by Northwestern to sell insurance policies. The restrictions placed on him, territorial boundaries and certain company policy considerations, were minimal. The time, place, and basic manner for selling the policies were left entirely up to Mr. Perciavalle. In addition, Northwestern never exercised any control over Mr. Perciavalle's day to day activities.
For the reasons set forth in the above opinion, this Court rules in favor of the Trustee and finds that Mr. Perciavalle was an independent contractor. Therefore, his insurance renewal commissions are not wages for current services and are not exempt under section 42.002(8) of the Texas Property Code.

EXHIBIT A *692 

*693 EXHIBIT B *694 
NOTES
[1] By having all of its agents operating as independent contractors, Northwestern does not have to concern itself with those burdens normally associated with being an employer. The Court suspects the basic reason that Northwestern and other insurance companies establish their agents as independent contractors and not as employees is to insulate themselves from as much potential tort and contract liability as possible (although there may be certain tax and other benefits.) To illustrate, when a tort claim arises from actions taken by an employee, the employer may be held liable under the theory of respondent superior. See Knutson v. Morton Foods, 580 S.W.2d 876, 877 (Tex.Civ.App.  Texarkana 1979), aff'd 603 S.W.2d 805. However, when the relationship between the parties is that of an independent contractor, the company is shielded from most the of the liability arising out of the independent contractors actions. See id. at 877.

The point of this elementary lesson is to show that the status "employee" and the status "independent contractor" are each created to satisfy real or perceived legal needs of the employer and should have nothing to do whether or not sums due from the employer to employee/contractor are exempt.